PEOPLE OF ILLINOIS EX REL. COMMISSIONERS OF HIGH-
WAYS
V.
BOARD OF SUPERVISORS.

*Town Bridges—County Aid—Emergency Clause of Section 19, Act of June 23, 1883—Construction of—Evidence—Mutilated Public Records—Presumption that Public Officers Have Done Their Duty.*

1. Upon a petition for a writ of *mandamus* to require a county to contribute half of the cost of a town bridge under the emergency clause of Section 19, Act of June 23, 1883, it is *held:* That an emergency which arose before and continued until after it went into effect is within the act; that this construction does not give the act a retroactive operation, and that the town is not required to show that it has provided half the funds necessary to build the bridge, it being the duty of the County Board, when such fact is not shown, to make its appropriation conditional.

2. In the absence of other suspicious circumstances, it is not a sufficient ground for the exclusion of a public record, when offered in evidence, that some of its leaves are missing.

[Opinion filed August 26, 1887.]

IN ERROR to the Circuit Court of Hancock County; the Hon. J. H. WILLIAMS, Judge, presiding.

Messrs. BENSON & PETERSON, MANIER & MILLER and HOOKER & EDMUNDS, for plaintiff in error.

Messrs. FRANK HALBOWER, States Attorney, W. E. MASON and O'HARRA & SCOFIELD, for defendant in error.

CONGER, J.  This was a proceeding by *mandamus* to require the County of Hancock to contribute one-half of the cost of a bridge over Crooked Creek, in the town of St. Mary's, in said county.  Trial was had at the June term, 1885, of the Hancock Circuit Court, and judgment rendered for appellees for costs.

Numerous errors are assigned upon the record, but we shall only notice those necessary to a determination of the rights of the parties.

On July 10, 1883, at the July meeting of the Board of Supervisors, the Highway Commissioners of St. Mary's presented a petition to the Board, representing that during the high water in February, 1883, the bridge across Crooked Creek in said town, on the public highway, etc., was washed away and wholly destroyed; that such highway had been used and worked for more than twenty years, and was the most important one in the township; that Crooked Creek was a large and important stream, being about 110 feet wide where this highway crossed it; that there was no other wagon bridge across said stream for a distance of about nine miles above and six miles below; that such bridge had been largely used by the inhabitants of said town, and other portions of Hancock County, in carrying their produce to market.

The petition represents that the immediate construction of a bridge being necessary, and that a delay in building it would be detrimental to the public interests, they had proper plans made, advertised for bids, and that upon due and proper notice, and upon competition, the lowest bid received to construct the same was $4,590, which was a fair and reasonable price, and that on the 22d day of June, 1883, they had let the contract at that price (not including the approaches, which were estimated to cost $700), by which contract the bridge was to be completed by the 15th of September, 1883.

The petition then gives in detail the assessed value of the property of the township as returned by the assessor, the

amounts necessary to be expended for other highway purposes, etc., the inability of the town, the necessity for county aid, as required by Sec. 19 of the Road and Bridge Act of 1883, except that it states that the assessment had not at that time been equalized by the State Board, and that they had not as yet made the requisite levies, but that it would be their duty to do so at their meeting in the fall immediately preceding the meeting of the Board of Supervisors in September.

To this petition was attached the sworn statement of the Commissioners that they had made a careful estimate of the probable cost of such bridge and approaches thereto, "and that in their judgment the sum of $4,590, at which the contract was let for the erection of the bridge, is a fair and reasonable cost for its construction, and that in their judgment and upon careful estimate the approaches thereto will cost about the sum of $700; that the construction of said bridge and approaches is necessary and demanded by the public interest, and that said bridge and approaches will not be made more expensive than is needed for the purpose desired."

The petition also stated that the town, by borrowing money, had made provision for the payment of one-half the amount necessary to construct said bridge and approaches.

The County Board postponed final action upon this petition until its meeting in September, 1883, when, upon the 12th of that month, the Commissioners filed a supplemental petition, referring to and making the original petition a part of the one then filed, and representing, in addition, that on the 4th of September, 1883, being the time fixed by law, they met and made a levy of 60 cents for road and bridge purposes, and a further levy of 20 cents, as required by Section 15 of the Road and Bridge Act, etc., and that the major part of the 60 cents would be needed for ordinary repairs, etc.; whereupon the County Board took final action and refused the aid asked.

We think these two petitions, when considered together, make a good and sufficient petition under the emergency clause of Sec. 16 of the Road and Bridge Act, and were sufficient if true to require the County Board to grant the relief asked.

There had been other petitions filed before the present law

took effect, which we do not notice, for the reason that in the view we take of the case they are immaterial.

It is contended by appellees that the emergency arose under the law of 1879, by the sudden destruction of the bridge, in February, 1883, and can not be regarded as coming within the emergency clause of the Act of 1883, unless some *new and changed* condition of affairs occurred after July 1, 1883.

We can not assent to this construction. The language of the provision is, " that in the case of some emergency arising from the sudden destruction or serious damage to a bridge or its approaches when delay in repairing or rebuilding would be detrimental to the public interest, such petition, etc., " may be presented, etc."

Webster defines the word emergency as " any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency." If when the law of 1883 took effect there was a pressing necessity for immediate action, and delay would have been detrimental to the public interest, the same emergency which arose at the time the bridge was destroyed would still exist. The emergency would be a continuing one, calling for prompt action upon the part of the authorities from the time of the destruction of the bridge until it should be rebuilt.

The Supreme Court, in the case of the Board of Supervisors of Logan County v. The People, etc., 116 Ill. 446, uses the following language:

" It is said that as the old bridge was swept away while the law of 1879 was in force, and before the law of 1883 went into effect, the latter law can not be made to apply to an emergency which arose before its passage. The Act of 1883 went into force on July 1, 1883, and repealed the Act of 1879, " in regard to roads and bridges, etc.," which had been theretofore in force since July 1, 1879. If the objection made is a sound one, then in case a bridge had been suddenly destroyed one day before July 1, 1883, the Highway Commissioners could not proceed to build a new one in its place and apply to the County Board " during the progress of the work, or after its completion," for money enough to pay for half its cost, even though

a delay in commencing the construction of the bridge until the next meeting of the Board would be seriously detrimental to the public interests. Such a result would not have been intended by the Legislature. It makes no difference that the old bridge was destroyed before the new law went into effect.

The water in the creek continued so high that work could not be begun on the new bridge until after July 1, 1883. The same emergency, therefore, which arose before that date, continued to operate as a spur to prompt action after that date. The material fact was that delay in rebuilding would be detrimental to the public interest.

When such detriment to public interest was threatened, it was the duty of the Commissioners to let the contract at once; it was not material whether the emergency, which made it so injurious to indulge in delay, occurred before or after the passage of the new law.

It is true that a retrospective effect will not be given to a statute unless it clearly appears that such was the intention of the Legislature. But this act of 1883 is not made to have a retroactive operation because a proceeding under it has grown out of an emergency that occurred before its passage. No accrued rights are affected. No existing liabilities are increased or diminished. The County Board was liable to pay half the cost of the bridge under the old law, and it is liable to the same extent and no more under the new law. The change made by the second provision of the 19th section was merely in the time of application for an appropriation.

Upon a given state of facts, such application could be made by the terms of that provision during or after the building of the bridge, whereas theretofore it could only be made before the work on the bridge was begun."

Upon the trial below the court excluded the record of the Town Clerk of St. Mary's for the reason that two leaves of the record book had been cut from the book. No evidence was offered tending to show whether the absent leaves had contained any part of the records of the town, or whether they were entirely blank when taken from the book.

The different town clerks were called, and all stated they knew nothing as to how or when it occurred.

We think there was nothing in this fact alone authorizing the court to exclude the book from the consideration of the jury. The book was a public record, required by law to be kept by public officers and for the benefit of any one interested in the business transacted by the town, and it is to be presumed until the contrary appears that they have done their duty, and the right of the public to the use of such records can not be destroyed by the mere fact, unaccompanied by any other suspicious circumstance, that a portion of the original leaves of the book are gone.

The whole controversy, however, over the introduction of this book in evidence, including the voluminous arguments submitted upon the question, is in our opinion unnecessary, as it is not essential, under Sec. 19 of the Act of 1883, for the town to show that it has provided one half the funds necessary to build the bridge; but when the necessary facts as provided in Sec. 19 appear, the County Board shall make its appropriation on condition that the town asking aid shall furnish the other half of the required amount.

The town may aver and show the provision of the funds on its part, and in such case the appropriation by the county should be unconditional; but if such fact is not shown the duty of the County Board to make the appropriation is equally imperative, but is conditional, and can be made available by the town only when it complies with its duty to provide the other half of the means.

There are many other errors assigned and urged upon our attention, but we deem it unnecessary to notice them.

For the errors indicated, the judgment of the Circuit Court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*