[No. 15166.   Department Two.   August 7, 1919.]

COLUMBIA RIVER TIMBER & LOGGING COMPANY,
*Respondent*, v. COMMISSIONERS OF DIKING
DISTRICT No. 2, OF WAHKIAKUM COUNTY,
*et al., Appellants.*[1]

DRAINS (7)—DISTRICTS—POWERS—STATUTES.   A diking district organized under Rem. Code, § 4091 *et seq.*, becomes a legal entity as a public corporation, and its commissioners, under §§ 4104, 4122, have discretionary powers which will not be reviewed by the courts in the absence of fraud.

SAME (7)—DISTRICTS—POWERS—CONTROL BY COURTS.   There is no sufficient evidence of fraud or arbitrary action by commissioners of a diking district to warrant interference by the courts, where it merely appears that there was a difference of opinion as to the necessity for the more elaborate improvements decided upon by the commissioners and increasing the cost, and a conflict in the evidence as to whether the attorney employed by them expected to profit in some improper way in the letting of the contract and the sale of bonds.

SAME (13-1) — DISTRICTS — LIABILITIES—CONTRACTS—VALIDITY.   It cannot be said that the commissioners abused their discretion in employing an attorney for $3,000 to do all the legal work in connection with the construction of an improvement costing $168,000, including the assessment of benefits and damages in eminent domain proceedings.

Appeal from a judgment of the superior court for Wahkiakum county, Hewen, J., entered May 8, 1918, in favor of the plaintiff, in an action for equitable relief, tried to the court.   Reversed.

*W. F. Magill,* for appellants.

*Crass & Hardin,* for respondent.

PARKER, J.—The plaintiff logging company, owner of land situated in Diking District No. 2, of Wahkiakum county, commenced this action in the superior court for that county, seeking to have the organization of

[1]Reported in 183 Pac. 134.

the district declared void, and to have the acts of its commissioners declared void and of no effect. William Stuart was made a defendant because he had been employed by the commissioners as attorney for the district, and there had been issued to him warrants of the district in part payment of his compensation; the relief sought being rested on the ground of fraud on the part of the commissioners and Stuart. A trial upon the merits resulted in a decree being rendered by the court adjudging that the district was legally organized and that the commissioners were duly elected and qualified; adjudging that the plans and specifications prepared for the proposed improvement by Baar & Cunningham, the engineers employed by the commissioners, which plans and specifications were adopted by the commissioners, "are unreasonable, nonworkable and impracticable, are excessively expensive and were arbitrarily adopted by the board of diking commissioners without due consideration for the interests of the respective property owners within said diking district," and enjoining the commissioners "from continuing or proceeding further with, or by virtue of, the plans and specifications prepared by Baar and Cunningham and adopted by said diking commission"; adjudging that the contract of employment entered into by the commissioners with Stuart, as attorney for the district, was "constructively fraudulent"; that the contract be annulled and set aside, and that the commissioners be enjoined from paying to Stuart any further sums under the contract, and that the payment of warrants already issued to him under the contract in part payment for his services be enjoined; adjudging that the employment of Baar & Cunningham as engineers for the district was unreasonable and excessive as to their compensation; that, in the employment of such engineers, the com-

missioners acted arbitrarily and not for the best interests of the property owners of the district, and that Baar & Cunningham are entitled to receive only a reasonable compensation for the actual services rendered by them, and not payment for such services under their contract; and finally, adjudging and directing that the commissioners "proceed *de novo* in the matter of carrying out the improvement." From this disposition of the case, the commissioners and Stuart have appealed to this court. No appeal is taken by the plaintiff from that portion of the decree which adjudges the district to have been legally organized and the commissioners duly elected and qualified.

This diking district was organized under the diking law of 1895 and the amendments thereto, now found in Rem. Code, §§ 4091 to 4136-5, inclusive. Let us first see just what the nature of a diking district is, and what the powers and duties of the commissioners are, under this law. Section 4091 reads in part as follows:

"Said district shall be known and designated as diking district No. ............ (here insert number) of the county of ................ (here insert the name of county) of the state of Washington, and shall have the right to sue and be sued by and in the name of its board of commissioners hereinafter provided for, and shall have perpetual succession, and shall adopt and use a seal. The commissioners hereinafter provided for, and their successors in office, shall, from the time of the organization of such diking district, have the power, and it shall be their duty, to manage and conduct the business and affairs of the district; make and execute all necessary contracts, employ and appoint such agents, officers and employees as may be required, and prescribe their duties, . . ."

Section 4097 reads in part as follows:

"All diking districts organized under the provisions of this act shall have the right of eminent domain with

the power by and through its board or [of] commissioners to cause to be condemned and appropriated private property for the use of said organization, in the construction and maintenance of a system of dikes and make just compensation therefor; . . ."

Section 4102 reads in part as follows:

"Said board of dike commissioners hereinbefore provided for shall have the exclusive charge of the construction and maintenance of all dikes or dike systems which may be constructed within the said district, and shall be the executive officers thereof, with full power to bind said district by their acts in the performance of their duties, as provided by law. . . ."

Section 4103 reads in part as follows:

"Whenever it is desired to prosecute the construction of a system of dikes within said district, said district, by and through its board of commissioners, shall file a petition in the superior court of the county in which said district is located, setting forth therein the route over which the same is to be constructed, with a complete description thereof, together with specifications for its construction, with all necessary plats and plans thereof, together with the estimated cost of such proposed improvement. . . ."

This section contains considerable detail directions touching the preparing of data and filing of a petition in the superior court, looking to the trial in court of the question of compensation to property owners, in acquiring rights of way for dikes and ditches, and of the question of benefits to result from the proposed improvement to the several tracts of land in the district. Section 4104 reads as follows:

"In the preparation of the facts and data to be inserted in said petition and filed therewith for the purpose of presenting the matter to the said superior court, the board of commissioners of said diking district may employ one or more good and competent surveyors and draughtsmen to assist them in compiling

data required to be presented to the court with said petition as hereinbefore provided, and such legal assistance as may be necessary, with full power to bind said district for the compensation of such assistants or employees employed by them, and such services shall be taxed as costs in the suit."

Section 4122 reads in part as follows:

"The board of commissioners of such district shall elect one of their number chairman and one secretary, and shall keep minutes of all their meetings, and may issue warrants of such district in payment of all claims of indebtedness against such district. . . ."

These provisions of the statute render it plain that a diking district, when lawfully created, becomes a legal entity as a public corporation, and that its board of commissioners possess the usual discretionary powers of managing boards of public corporations, in so far as the powers and duties enumerated in the above quoted sections of the statute are concerned. This being so, let us be reminded of the elementary principle so well stated by Judge Dunbar, speaking for the court, in *State ex rel. News Pub. Co. v. Milligan*, 3 Wash. 144, 28 Pac. 369, as follows:

"No principle of equity jurisprudence is better established than that courts of equity will not sit in review of proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies the exercise of that discretion in good faith will not, in the absence of fraud, be disturbed. High on Injunctions (3d ed.), § 1240."

This is the controlling law of this case.

The organization of the district having been completed, the commissioners employed Stuart as attorney for the district, agreeing to pay him the total sum of $3,000 for rendering all necessary legal services incident to the construction of the improvement, including the acquisition of the rights of way for the necessary

dikes and ditches and the assessment of damages and benefits to be determined in the eminent domain and assessment proceedings in court. The commissioners also employed Baar & Cunningham, engineers, to make surveys, prepare plans and specifications for the proposed improvement, and to superintend the construction after the letting of a contract therefor, agreeing to pay them for such services "five and one-third per cent of the total actual cost of the project." The engineers made final surveys and prepared detailed plans and specifications for the improvement, estimating the cost thereof at $168,000. The commissioners then being about ready to present their petition to the superior court as provided in § 4103, above quoted from, looking to the acquisition of rights of way for the necessary dikes and ditches and the assessment of damages and benefits, the plaintiff commenced this action in equity in the superior court, which resulted in a decree, from which this appeal is prosecuted.

We have painstakingly reviewed the evidence contained in this voluminous record, and cannot escape the conclusion that the decree of the trial court has no more substantial foundation to rest upon than that the evidence furnishes some ground for arguing that the commissioners did not decide the matters they were called upon to decide, which are here in question, as those matters should have been decided. We think the evidence wholly fails to show any arbitrary or capricious action on the part of the commissioners, or any intent on their part to exercise other than their best judgment in employing Stuart as attorney, employing Baar & Cunningham as engineers, and in adopting the plans and specifications prepared by them for the improvement.

Touching the question of the adoption of the plans and specifications, W. G. Brown, an engineer and

owner of land in the district, testified in substance
that, in his opinion, the plans and specifications called
for an improvement more elaborate and extensive than
was necessary, especially in that the adopted plans and
specifications called for the construction of dikes
somewhat higher than necessary, and that a sufficient
improvement with lowered dikes could be constructed
for approximately $108,000.   The evidence, we think,
furnishes ample room for difference of opinion as to
what the nature and extent of the improvement in this
and some other particulars should be.   Brown, as an
owner of land in the district, had considerable to do
with the promotion of the creating of the district and
the defining of its boundaries, but did not prepare any
detailed plans or specifications for the proposed im-
provement.   He was an applicant for the position of
engineer of the district and had offered to the commis-
sioners to do the engineering work for a compensation
of five per cent of the actual cost of the improvement,
limiting his compensation to five per cent of $110,000.
The claim that the improvement would be more elab-
orate and extensive than necessary, according to the
plans of the engineers, is supported almost wholly by
the testimony of Brown alone, while the testimony of
Mr. Cunningham, one of the engineers, is, we think,
equally positive and apparently as trustworthy in
support of the improvement being as elaborate as the
plans and specifications prepared by his firm called
for.   Clearly, we think it was not such an abuse of dis-
cretion on the part of the commissioners, under the
circumstances, to employ Baar & Cunningham and
finally adopt their plans and specifications as to war-
rant interference therewith by the trial court.   Aside
from the question of actual fraud touching these ques-
tions, it seems to us that the case involves nothing but
a question of difference of opinion concerning matters

which the commissioners were, by virtue of their position, called upon to decide as administrative officers.

The evidence touching the question of actual fraud was directed almost wholly to the alleged wrongdoing of Stuart; and according to the contentions of counsel for plaintiff, tended to show that Stuart had made improper proposals to one Randles, a contractor, and had entertained improper proposals from him, looking to the ultimate awarding of the construction contract to Randles without competition, by which Stuart in some way was to profit. Just how Stuart was to be able to bring about any such condition is not shown, except by the suggestion, which is practically wholly without support in the evidence, that he was going to be able to control the action of the commissioners when it came to awarding the contract. But we think the evidence touching these questions does not lend any support to the view that the commissioners were parties to any such contemplated wrong action on the part of Stuart. The evidence tending to show these alleged acts on the part of Stuart rests largely upon the testimony of Randles, which was taken by deposition, and which, in the main, was positively contradicted by the testimony of Stuart. True, there was some other evidence lending some support by way of side-lights to the claim that Stuart entertained some notion of improperly profiting in some way by the contract, or by the sale of the bonds of the district. But, upon the whole, we think it may be said that, even as to this question, the evidence was no more than fairly evenly balanced. But this, to our minds, is not a controlling question. It might be regarded as sufficient showing to warrant the commissioners in discharging Stuart as attorney for the district; but plainly it was not such as to warrant the court in interfering with the commissioners continuing the employment of

Stuart as attorney for the district, under his contract of employment, and fell far short of being a sufficient showing to warrant the court in interfering on the ground of fraud on the part of the commissioners.

As to the employment of Stuart at a total compensation of $3,000 for all of the legal work to be done in connection with the construction of the improvement, acquiring of the rights of way, and the assessing of benefits and damages by eminent domain and assessment proceedings in court, being "constructively fraudulent," as it is characterized in the decree, such view of that action by the commissioners has no foundation other than the claim that the compensation is excessive. Plainly, we think, in view of the magnitude of the project and the probable amount of legal work to be performed under the contract, it cannot be said that the commissioners abused their discretion in agreeing to pay Stuart compensation in that amount.

We are quite convinced that to affirm the decree of the trial court would be but to sanction judicial interference with the discretion of the commissioners, in the exercise of which they are not guilty of either actual or constructive fraud, and that the decree must be reversed and the action dismissed. It is so ordered.

HOLCOMB, C. J., MOUNT, FULLERTON, and BRIDGES, JJ., concur.