[No. 20816.  Department One.  November 22, 1927.]

THE STATE OF WASHINGTON, on the Relation of Samuel Porter, Plaintiff, v. THE SUPERIOR COURT FOR FERRY COUNTY, Respondent.[1]

[1] APPEAL (3, 6)—NATURE AND FORM OF REMEDY—PROPER MODE OF REVIEW—NECESSITY OF LAW PRESCRIBING MODE—APPEAL OR WRIT OF CERTIORARI.  Under Const., art. 4, § 4, providing that the supreme court shall have appellate jurisdiction in all actions and proceedings, the court has power to review, on any proper application, a judgment of the board of county commissioners declaring an emergency under the county budget law, Rem. 1927 Sup., § 3997-6, regardless of whether the statute gives a right of appeal or not.

[2] COUNTIES (68)—FISCAL MANAGEMENT—LIMITATION ON USE OF FUNDS—COUNTY BUDGET—"EMERGENCIES."  Rem. 1927 Sup., § 3997-6, authorizing county expenditures in excess of the county budget in case of two specified classes of emergencies, to be found by the board of county commissioners in the first class only after notice and hearing, and in the second class without notice, emergencies of the first class are not limited to those things enumerated in the second class, on any application of the principle of ejusdem generis; but they are distinct and only the first require notice.

[3] SAME (22)—COUNTY BOARD—APPEALS FROM DECISIONS—REVIEW OF FINDINGS.  A finding of the board of county commissioners of an emergency under the county budget law will not be disturbed on appeal where the evidence does not clearly preponderate against it.

[4] SAME (62)—LIMITATION OF INDEBTEDNESS—NECESSARY EXPENSES.  The constitutional limitation on the indebtedness of a county does not apply to the necessary expenses of the sheriff's office, required for proper service of process, both civil and criminal.

Certiorari to review a judgment of the superior court for Ferry county, Neal, J., entered August 10, 1927, affirming, on appeal, order of the board of county commissioners.  Affirmed.

[1]Reported in 261 Pac. 90.

*Samuel Porter,* for relator.

*James T. Johnson,* for respondent.

*The Attorney General* and *E. W. Anderson, Assistant, amici curiae.*

Tolman, J.—This is an original action, brought in this court to secure a review of a judgment entered by the superior court for Ferry county, affirming an order of the board of county commissioners declaring that an emergency exists in the office of the sheriff of that county, and appropriating money to meet the emergency.

It appears that, on July 5, 1927, the board of county commissioners, by unanimous vote, adopted a resolution as follows:

"Ernest Clemens, sheriff of Ferry county, Washington, appeared before the board and stated that the budget of his office has become exhausted and depleted in several of its departments, to-wit: gasoline, oil, repairs, labor, tires, records and supplies, deputy hire and board for county prisoners, and asked that an emergency appropriation for $1,000 be made by the county, through this board, to carry said sheriff's office through the balance of this year.

"Said matter having been carefully investigated by all members of the board, Mr. Inman, offered the following resolution, to-wit: Be it resolved, that a public emergency exists in the office of the sheriff of Ferry county, Washington, in the following amounts, to-wit:

Gasoline, oil, repairs and labor.............$300.00
Tires .......................................  125.00
Records and supplies.........................   15.00
Deputy hire .................................  360.00
Board for county prisoners...................  200.00

        Total ........................... $1,000.00

"That such deficiency could not have been reasonably foreseen at the time of making the county budget

for the year 1927, and that it is now necessary for the proper and efficient operation of said sheriff's office, that such emergency appropriation be made so that said sheriff's office can function continually and in all its departments during the balance of the present year, 1927.

"Mr. Inman thereupon moved the adoption of the foregoing resolution, which was seconded by Mr. White, and was thereupon voted upon and carried by the unanimous vote of all three members of the board, voting in favor of said resolution.

"Mr. Inman thereupon moved that said resolution and a notice that a public hearing thereon be held by this board at its office at the court house, at Republic, in Ferry county, Washington, on Monday, the 1st day of August, 1927, at 10 o'clock in the forenoon of said day, be published in both newspapers of the county so that taxpayers may appear and be heard for or against the expenditure of money for such alleged emergency, which motion was seconded by Mr. White and was thereupon voted upon and carried by the unanimous vote of all three members of the board."

Due notice was given as required by the statute, detailed and specific objections were filed, which embodied the central idea that the board was well informed, at the time it adopted the budget for the year 1927, of the necessities of the sheriff's office, that the amount appropriated for that office was amply sufficient, if the office were properly and economically administered; that the sheriff knew the facts, and yet that he, totally disregarding the situation, expended the appropriation in a reckless and extravagant manner; and that, therefore, there was no emergency. A hearing was had on the return day, and at the conclusion of the hearing the board, by unanimous vote,—

"Ordered that the following emergency appropriation be allowed for the different departments of the sheriff's office, to-wit:

Gas, oil, repairs and labor..................$300.00
Tires ...........................................  125.00
Records and supplies.........................   15.00
Deputy hire...................................  160.00
Board for county prisoners...................  100.00
                                          _____
    Total ..................................$700.00''

An appeal was taken to the superior court, in the manner provided by the statute. A hearing was had, evidence was received, and thereupon the superior court affirmed the order of the board of county commissioners.

The statute involved is § 2 of ch. 143, Laws of 1925, p. 393; Rem. 1927 Sup., § 3997-6, which so far as is here in issue, reads as follows:

"Sec. 2. That section 6, Chapter 164, Laws of Washington, 1923, be and the same is hereby amended to read as follows:

"Section 6. When a public emergency other than such as are specifically described hereinafter, and which could not reasonably have been foreseen at the time of making the budget, shall require the expenditure of money not provided for in the budget, the county commissioners by unanimous vote of the commissioners present at any meeting the time and place of which all the commissioners shall have had reasonable notice, shall adopt and enter upon their minutes a resolution stating the facts constituting the emergency and the estimated amount of money required to meet the emergency, and shall publish the same, together with a notice that a public hearing thereon will be held at the time and place designated therein but which shall not be less than one week after the date of said publication, at which any taxpayer may appear and be heard for or against the expenditure of money for such alleged emergency. Such resolution and notice shall be published once in the official county newspaper, or if there be none, in a newspaper of general circulation in the county. Upon the conclusion of said hearing, if the county commissioners shall approve of

said emergency expenditure, they shall make and enter upon their official minutes by a unanimous vote of all members of the board of county commissioners an order setting forth the facts constituting the emergency, together with the amount of expenditure authorized by them therefor, which order, so entered, shall be lawful authorization for them to expend said amount for said purpose, subject, however, to the following limitations: No expenditure shall be made or liability incurred pursuant to said order until a period of five (5) days, exclusive of the day of entry of said order, shall have elapsed, during which time any taxpayer or taxpayers of such county feeling aggrieved by said order may appeal therefrom to the superior court of such county by filing with the clerk of such court a verified petition, a copy of which shall have theretofore been served upon the County Auditor of such county as clerk of the board of county commissioners. Such petition shall set forth in detail the objections of petitioner or petitioners to such order and his or their reasons why the alleged emergency does not exist. The service and filing of such petition shall operate to suspend said emergency order and the authority to make any expenditure or incur any liability thereunder until final determination of the matter by the court. Upon the filing of such petition the court shall immediately fix a time for hearing such petition which shall be at the earliest convenient date. At said hearing the court shall hear the matter *de novo* and may take such testimony as it deems necessary. Its proceedings shall be summary and informal and its determination as to whether an emergency such as is contemplated within the meaning and purpose of this act exists or not and whether the expenditure authorized by said order is excessive or not shall be final.

"Upon the happening of any emergency caused by fire, flood, explosion, storm, earthquake, epidemic, riot or insurrection, or for the immediate preservation of order or of public health or for the restoration to a condition of usefulness of any public property the usefulness of which has been destroyed by accident, or for the relief of a stricken community overtaken by a calamity, or in settlement of approved claims for per-

sonal injuries or property damages exclusive of claims arising from the operation of any public utility owned by the county, or to meet mandatory expenditures required by any law the county commissioners may, upon the adoption by the unanimous vote of the commissioners present at any meeting the time and place of which all of such commissioners shall have had reasonable notice, of a resolution stating the facts constituting the emergency and entering the same upon their minutes, make the expenditures necessary to meet such emergency without further notice or hearing.'' (Rem. 1927 Sup. § 3997-6.)

This statute seems to recognize two kinds of public emergencies: First, something other than the happening of events which are therein afterwards described; and, second, those emergencies caused by fire, flood, or any of the other means specifically enumerated in the statute.

[1] Upon the question of the jurisdiction of this court, it is immaterial whether this be an emergency of the first or of the second class, since the language of the statute as to the effect of the judgment of the superior court seems to cover both classes:

''. . . its determination as to whether an emergency such as is contemplated within the meaning and purpose of this act exists or not and whether the expenditure authorized by said order is excessive or not. shall be final.''

In view of the emergent nature of the subject matter of the controversy, the necessity for its prompt determination, and the great ills that might follow upon delay, it seems evident that the language of the statute was intended to mean just what it says, and that the legislature clearly intended that a finding by the court. as to the existence of an emergency and that the appropriation is or is not excessive, should not be further litigated. Indeed, we see no way in which the intent. could have been made more plain.

Our Constitution, art. IV, § 4, provides:

"The supreme court shall have . . . appellate jurisdiction in all actions and proceedings, excepting that its appellate jurisdiction shall not extend to civil actions at law for the recovery of money or personal property when the original amount in controversy or the value of the property does not exceed the sum of two hundred dollars. . . ."

We are not now concerned with the right of appeal in civil actions at law for the recovery of money or personal property. This is not such an action. But we are concerned with the question of appellate jurisdiction in all actions and proceedings. In *State ex rel. Great Northern R. Co. v. Railroad Commission*, 60 Wash. 218, 110 Pac. 1075, after quoting the statute giving the right of appeal to an aggrieved party from any judgment, and quoting also that part of § 4, art. IV, of the Constitution which we have just quoted, the court said:

"We do not quote this constitutional provision with a view to arguing that the state may not withhold the right of appeal from one of its officers or commissions when made a party to an action or proceeding involving a matter of public concern only, but only as indicating the general liberal policy of our laws in allowing appeals to our court of last resort. In view of these statutory and constitutional provisions, we are not inclined to deny the right of appeal to the commission, in the absence of some special statute clearly evidencing the legislative intent to that effect. The only evidence we have of such an intent by the legislature is the provisions of § 8629 above quoted, which in terms seems to give the right of appeal to the railway company, with no provision therein as to an appeal by the commission or other party that may have instituted the proceedings in the first instance. If we need to look for a reason for the mentioning of the appeal by the railway company to avoid the conclusion that it was not intended to accord this right to the commission or other original complainant, it may be found in the

special provision relating to giving bond other than the usual appeal bond in connection with the appeal by the railway company.

"It may be well argued, as suggested by learned counsel for the commission, that the matter of appeal by the railway company was only mentioned in this statute for the purpose of prescribing the conditions upon which it might prosecute such appeal. It was certainly unnecessary to there give the right which was already so clearly given by the general appeal law. In any event, we are of the opinion that the mere absence of any express provision in the railway commission law giving the right of appeal to the commission, notwithstanding other provisions therein, does not give rise to an inference of sufficient strength to take from the commission the right of appeal so plainly given by the general law on that subject; providing, of course, the commission has such an interest in the matter as to be an aggrieved party."

This would seem to furnish the basis for an argument that, if the judgment of the superior court had been adverse to the board of county commissioners, and that board had appealed or attempted to review the judgment, the expressed intention of the legislature might warrant a holding that the judgment was final. But the *Great Northern* case does go to the right of appeal on the part of the objecting taxpayer. This, of course, is not an appeal; but if, by the constitution, the right of appeal is given, and if there be no statute fixing the manner in which that right may be exercised, we would be bound to review the judgment on any proper application, and this proceeding would seem to be sufficient. However, in view of the conclusion we have reached upon the merits, we deem it wise to leave the question of the right of appeal open for decision in some future case where the question may be more fully presented.

[2] On the merits, we think the judgment of the superior court must be affirmed. As we have already

said, the statute covers two classes of emergencies, and we see no reason for making an inverse application of the rule of *ejusdem generis* and holding that the emergencies of the first class are in any wise limited to those things enumerated in the second class. The legislature has itself excluded that idea by the language, "a public emergency other than such as are specifically described hereinafter." Also, a notice and hearing is a statutory pre-requisite to the declaring of an emergency of the first class, but not as to an emergency of the second class. Therefore, the legislature did not and could not have intended that both should mean the same thing.

The term "emergency" is variously defined, but the controlling idea in all the definitions is that it is something unforeseen. It is defined in 15 Cyc. 542, as:

"Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition."

See, also: *Mallon v. Board of Water Commissioners,* 144 Mo. App. 104, 128 S. W. 764; *Colfax County v. Butler County,* 83 Neb. 803, 120 N. W. 444; *Parker v. City of Monroe,* 128 La. 951, 55 South. 587; *People of Illinois v. Board of Supervisors,* 21 Ill. App. 271; *Sheehan v. City of New York,* 37 Misc. Rep. 432, 75 N. Y. S. 802.

Bearing the definition in mind, the statute is wholly plain and unambiguous. The second or self-evident emergencies are limited to those events specifically mentioned. The first, or debatable emergencies, include all other occurrences or conditions which could not reasonably have been foreseen at the time of the making of the budget. Hence the necessity for notice and hearing.

[3] It was, therefore, necessary only for the board and the lower court to determine whether or not the

board could or should have reasonably foreseen the necessity when it adopted the budget in October of the preceding year. This, of course, was a question of fact, involving, perhaps, an element of discretion. The board having found the fact, and the trial court, on a hearing *de novo*, having affirmed that finding, we can only disturb it in the event we find that the evidence clearly preponderates against it, or if it appears that the board has acted arbitrarily or capriciously. *Heffner v. Board of County Commissioners*, 16 Wash. 273, 47 Pac. 430; *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757; *Ponischil v. Hoquiam Sash etc. Co.*, 41 Wash. 303, 83 Pac. 316; *Columbia River T. & L. Co. v. Commissioners of Diking District No. 2*, 108 Wash. 148, 183 Pac. 134; *In re Drainage District No. 10*, 119 Wash. 8, 204 Pac. 1050.

[4] It clearly appears that the funds provided in the regular budget for the sheriff's office had been exhausted; and that, unless funds were provided in the manner directed by the statute, the sheriff's office would necessarily cease to function. The county has no other peace officer, the proper and prompt service of process, both civil and criminal, is a necessity, and the maintenance of the sheriff's office is one of those mandatory necessities which will justify the ignoring of even constitutional debt limitations. *Rauch v. Chapman*, 16 Wash. 568, 48 Pac. 253, 58 Am. St. 52, 36 L. R. A. 407; *Duryee v. Friars*, 18 Wash. 55, 50 Pac. 583.

It is not sufficient to say that the sheriff has been remiss. The legislature can and should provide means for the proper punishment or penalizing of an officer who needlessly or negligently causes an emergency. If an emergency in fact exists, the county commissioners must so find and must provide funds in order that the necessary functions of the governmental agencies un-

der their control shall continue. Otherwise, we shall have chaos.

A study of the evidence convinces us that it clearly supports the findings of the board and of the lower court. The judgment is, therefore, affirmed.

FRENCH, PARKER, MAIN, and HOLCOMB, JJ., concur.