[No. 21538. *En Banc.* November 27, 1928.]

THE STATE OF WASHINGTON, *on the Relation of Roland H. Hartley, as Governor etc., Appellant,* v. C. W. CLAUSEN *et al., Respondents.*[1]

[1]Reported in 272 Pac. 22.

*E. H. Guie* and *Coleman & Fogarty*, for appellant.

*The Attorney General* and *L. B. Donley, Assistant,* for respondents.

MAIN, J.—As stated when the case was here upon a former appeal, 146 Wash. 588, 264 Pac. 403, this action was brought for the purpose of restraining the majority of the highway committee from employing and paying Thomas R. Beeman as secretary and consulting engineer for the committee. Upon that appeal, the judgment was reversed and the cause remanded for trial. The principal question there involved was whether the relator had the right to maintain the action and it was held that he had such right. Incidentally it was held that the complaint stated a cause of action. As a result of the trial in the superior court, after the case went back, a judgment was entered dismissing the action, from which the relator appeals.

It is first contended that the ruling upon the prior appeal is controlling upon this appeal, inasmuch as it was held, upon that appeal, that the complaint stated a cause of action. There were allegations in the complaint to the effect that the employment of Mr. Beeman had for its purpose the superseding and nul-

lifying of the work of the highway engineer, who is appointed by the governor. The facts developed upon the trial failed to support this allegation. The employment of Mr. Beeman was not for the purpose and in fact does not supersede or nullify the work of the regularly appointed highway engineer. If the purpose were to supersede or nullify the work of the highway engineer, an entirely different question would be presented upon which we here express no opinion, because that question is not now before us.

The second question is whether the highway committee has a right to appoint a consulting engineer to advise the members thereof with reference to the feasibility of proposed state roads and the outline and profile maps, plans and specifications which are prepared by the highway engineer. The highway committee is composed of three state officers, the governor, the auditor and the treasurer. July 26, 1927, the following resolution was passed by a majority of the committee:

"At a meeting of the Highway Committee of the state of Washington held at Olympia, Washington, July 26, 1927, it is resolved that

"WHEREAS, heretofore and on or about May 1st, 1927, the then state Highway Engineer of the state of Washington was summarily removed from such office by the Chief Executive of the state of Washington, and that the said state Highway Engineer was replaced by an inexperienced person, and

"WHEREAS, the said incoming state Highway Engineer has discharged a large number of experienced and competent employees of said department, and

"WHEREAS, other experienced and competent employees have since resigned and the places of such experienced and competent employees have been filled by untried men of limited experience, and

"WHEREAS, the said Highway Committee of the state of Washington is by law made responsible for the expenditure of the motor vehicle fund of $23,362,-

360.00, and for the letting of contracts for the improvement, building and maintenance of the various highways of the state of Washington, and

"WHEREAS, the members of said committee are not required by law to be highway engineers and are not qualified as engineers, and

"WHEREAS, the state Highway Committee desires the services of a competent engineer, experienced in highway construction to assist and advise the state Highway Committee in the carrying on of its duties and to act as secretary to said committee, and

"WHEREAS, Thomas R. Beeman is such an experienced engineer of wide experience in highway construction, and

"WHEREAS, an emergency exists and has existed at all times since May 1, 1927, and that such emergency requires the employment of such an engineer by said committee, Now, Therefore,

"BE IT RESOLVED by the state Highway Committee that the said Thomas R. Beeman be, and is hereby employed as technical engineer advisor and secretary for the Highway Committee of the state of Washington and that his salary for such services be, and the same is hereby fixed at the sum of $5,000 per annum, and that an emergency exists, and that the employment of such an engineer is necessary for the carrying out of the duties of the state Highway Committee and the carrying out of the legislative program for the construction, maintenance and operation of the highway system of the state of Washington."

This resolution was supported by the auditor and treasurer and resisted by the governor. It is therein provided that Thomas R. Beeman be employed as a technical engineer advisor and secretary for the highway committee and that his salary for such services shall be the sum of $5,000 per annum.

In the case of *State ex rel. Clausen v. Hartley,* 144 Wash. 135, 257 Pac. 396, the right of the committee to employ a secretary to keep its records was recognized. Whether the committee acting through a majority of its members has a right to employ a technical

engineer to advise the members thereof with reference to the feasibility of proposed state roads and with reference to the outline and profile maps and plans and specifications depends upon whether such authority has been either expressly or impliedly given to the committee by the legislature. Rem. Comp. Stat., § 6763, provides:

"Whenever any money is appropriated for the construction of a state road, the state highway commissioner (engineer) shall, unless such road has been theretofore surveyed, cause survey to be made of the entire length of such highway, and cause the same to be mapped both in outline and profile, and shall also cause plans and specifications for the construction of such highway to be prepared. Such maps, plans and specifications shall be thereupon submitted to the state highway board (committee), and no portion of any appropriation shall be expended upon such road until the state highway board (committee) shall have declared such road feasible and shall have approved said outline and profile maps and said plans and specifications."

This section defines the duties of the highway engineer and also of the highway committee. It is there expressly made the duty of the committee to determine the feasibility of a proposed state road and to approve "outline and profile maps and plans and specifications." There is no express authority given in the statute to the committee to employ a consulting engineer to advise it with reference to the matters which the statute makes it the duty of the committee to pass upon. The question then arises whether there is implied authority.

It is a well recognized rule of law that, if a board is charged with a specific duty and the means by which the duty is to be accomplished are not specified or provided for, the board so charged has the implied power to use such means as are reasonably necessary to the

successful performance of the required duty. In *State ex. rel. State Board of Medical Examiners v. Clausen,* 84 Wash. 279, 146 Pac. 630, it is said:

"In other words, if a person or board is charged by law with a specific duty, and the means by which the duty is to be accomplished are not specially provided for, the person or board so charged has the implied power to use such means as are reasonably necessary to the successful performance of the required duty, which in the present case might include the power to employ private counsel. But where a person or board is charged by law with a specific duty, and the means for its performance are appointed by law, there is no room for implied powers, and the means appointed must be followed, however inadequate may be the result."

The statute above quoted, as stated, places upon the highway committee the specific duty of passing upon the feasibility of state roads and the plans and specifications therefor. The members of the committee are not technical highway engineers and are not by law required to be such. In order to perform the duties required by the statute, technical information is necessary. It would seem plain that the committee has the implied power to employ such assistance as may be necessary to enable it to perform the specific duty which is imposed upon it by the statute.

The case of *Young v. State,* 19 Wash. 634, 54 Pac. 36, differs from the one now before us in this. There there was no constitutional or statutory provision which either expressly or by necessary implication authorized the governor to employ expert assistance for the purpose of investigating the books and accounts of the state penitentiary; while here, as stated, there is necessarily the implied authority for the committee to employ such assistance as may be necessary to enable it to perform the duties imposed upon it by law. In that case, the rule with reference to implied

authority is recognized, but was held not to apply for the reasons stated.

In the cases of *Ritchie v. State,* 42 Wash. 653, 85 Pac. 417, and *State ex rel. Port of Seattle v. Superior Court,* 93 Wash. 267, 160 Pac. 755, the rule is also recognized, but owing to the particular facts of those cases was not applied. We do not understand any of the cases just referred to to disagree with the proposition above stated and with the declaration of law as it appears in *State ex rel. State Board, etc., v. Clausen, supra.*

It is stated, however, that, if the state highway committee needs a consulting engineer to advise it with reference to the feasibility of a proposed road or the plans and specifications, the appointment of such assistant should be made by the state highway engineer. Rem. Comp. Stat., § 6764, provides:

"The state highway commissioner (engineer) shall have authority to employ such civil engineers and assistants as may be necessary to carry out the provisions of section 6793, and to provide for superintendents of construction and maintenance work on state roads, and the expense so incurred shall be considered a part of the cost of the road in connection with which such expense is incurred and shall be a charge against the fund appropriated for the construction of such road. He shall also have authority to employ such assistants as may be necessary to carry on the office work of the highway department."

Obviously, this section refers to the duties of the highway engineer as they are defined in the preceding section, which is above quoted, and does not apply to the duties of the committee specified in that section. Section 6764 recites that the highway engineer shall have authority to employ such civil engineers and assistants as may be necessary to carry out the provisions of § 6763 and provide for superintendents of construction and maintenance work on state roads. It

would hardly seem that the legislature, after having made it the duty of the highway committee to pass upon and approve the work of the highway engineer, intended, that if the committee needed expert advice, it should be furnished by the engineer who prepared the plans and specifications upon which the committee was required to pass and give its approval or disapproval. We think that the committee had the implied power to employ a secretary to keep its records and a consulting engineer to advise the members thereof with reference to the feasibility of state roads and the plans and specifications thereof which were prepared by the highway engineer and submitted to the committee for its approval.

The next question is whether there is any fund out of which Mr. Beeman can be paid. For the construction and maintenance of highways, streets and bridges, Laws of 1927, ch. 314, p. 903, the legislature appropriated the sum of $23,362,360, which it was provided should

" . . . be expended under the direction of the state highway committee, except moneys appropriated for cities and towns."

The act contains a detailed list of the roads to be constructed or improved and the amount which shall be expended for each. There is also this provision:

"Shops, road signs, oil equipment, emergencies, maintenance and oiling of state highways, $3,310,000."

Here is an appropriation for a number of distinct purposes which are not related or dependent upon each other and one of which is "emergencies." H. G. Porak, office engineer in the highway department, testified that, since May 1, 1927, there were one hundred and thirteen contracts let, and from that date to May 12, 1928, ten million dollars, approximately, had been expended,

". . . for contract and labor work for construction, reconstruction and betterment jobs, not including overhead, location and right of way."

From the evidence in this case, it appears that two members of the highway committee, the auditor and treasurer, do not have confidence in the ability of the present highway engineer. The committee is charged with the duty, as it appears from what has already been said, not only of determining the feasibility of proposed state roads and approving or disapproving of plans and specifications, but also with the duty of expending properly a large sum of money. Whether an emergency existed must, of course, depend, in the first instance, upon the judgment of the highway committee, and that judgment will not be disturbed unless it can be said that the majority of the committee, in employing a consulting engineer, acted arbitrarily or capriciously. *Ness v. Fisher*, 223 U. S. 683; *State ex rel. Yeargin v. Maschke*, 90 Wash. 249, 155 Pac. 1064; *Sweitzer v. Industrial Insurance Commission*, 116 Wash. 398, 199 Pac. 724. In the case last cited it was said:

"Action is not arbitrary or capricious when exercised honestly and upon due consideration where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached."

Under the evidence in this case, we would not be justified in holding that a majority of the committee, in employing a consulting engineer, acted arbitrarily or capriciously.

The fact that a majority of the committee lacked confidence in the ability of the highway engineer was an unforeseen occurrence or condition, and this would be sufficient to constitute an emergency, taking into consideration the duties of the committee imposed by law both as to plans and specifications and

the expenditure of the appropriation. The definition of an emergency, as it appears in 15 Cyc. 542, was quoted with approval in the case of *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90, and is as follows:

"Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition."

As already stated, there was an unforeseen occurrence or condition which confronted a majority of the highway committee, and, therefore, an emergency existed which made the appropriation for "emergencies" available.

Chapter 9 of the Laws of 1925, p. 15 (Rem. 1927 Sup. § 10927-1), which is the state budget law, is not applicable to the present situation. From § 10 of that act (Rem. 1927 Sup., § 10927-10), it appears that it applies to cases where there has been an insufficient or no appropriation which is necessary for the preservation of peace, health or safety or for the carrying on of the necessary work required by law of any of the departments of the state government. In the present case, there is an appropriation for emergencies and, as we have seen, the compensation of Mr. Beeman may be paid out of that fund. There is no claim that there is not sufficient money in that particular fund to pay the compensation.

Finally, it is said that Mr. Beeman has never advised the highway committee. It may be accepted as true that, at times when the committee is deliberating in formal regular session pursuant to call, he has not advised the committee. The evidence, however, shows that he did give advice and assistance to two members of the committee with reference to the matters which it was their duty to pass upon at a regularly

constituted meeting of the committee. It is undoubtedly true that the members of the committee, prior to taking formal action in a regular session of the committee, must acquire information upon the basis of which they can act properly and intelligently. The services rendered by Mr. Beeman to two members of the committee, in addition to keeping the records of the committee, it is not necessary here to detail.

The judgment will be affirmed.

MITCHELL, BEALS, PARKER, ASKREN, and FRENCH, JJ., concur.

TOLMAN, J. (dissenting).—I cannot concur in the opinion of the majority for a number of reasons, which, under the peculiar circumstances, need only to be briefly mentioned, as no good purpose would be served by a lengthy discussion and argument.

The majority, in effect, holds against the allegation of the complaint that the employment of Mr. Beeman was for the purpose of superseding and nullifying the work of the highway engineer. It seems to me self-evident that the purpose must be to overrule or supersede the highway engineer, otherwise there could be no purpose whatsoever to be served save only the performance of clerical duties. If the majority refuses to follow the advice of the state engineer, takes other advice and acts accordingly, the result is to supersede the state engineer beyond all question. It seems to me apparent from the pleadings, the evidence, and the general admissions in the case, that, except for the idea of superseding the state highway engineer, Mr. Beeman would not have been appointed.

The second point upon which I differ from the majority has to do with the duties of the highway committee and its implied authority. Taking our statutes on the subject as a whole, it is apparent that the pur-

pose of the law is to make the state highway engineer the professional engineering authority to whom the committee is expected to look for advice and guidance. The members of the committee, being elected state officers whose principal duties have nothing to do with civil engineering, it is a matter known to the legislature that necessarily at all times the members of the committee will be without technical knowledge and skill, and must rely for advice and direction in the technical matters upon the adviser which the statute law has given them, namely, the highway engineer. If, at any time, the highway engineer should prove to be incompetent, the responsibility rests upon the appointing power and not upon the committee. That there is anything in the statute which directly, indirectly, or by any reasonable inference, can justify the committee, or any members thereof, in disregarding the advice of the highway engineer, or in taking other advice for the purpose of overruling him, I categorically deny. There is no implied authority to seek advice other than from the source which the statute law has provided, and if what is now a majority can employ a technical adviser for the purpose of overruling the authority constituted by the statute, then in the future that majority can divide, each member can employ such a technical adviser and we will have ''confusion worse confounded.''

It is true that in *State ex rel. Clausen v. Hartley,* 144 Wash. 135, 257 Pac. 396, we held that the committee had the incidental power to employ a secretary to keep its records. With the statute law in mind, it will be seen that the records referred to were simply and solely the minutes of its meetings and official acts and a secretary to keep such minutes would be a mere stenographer, clerk or servant, and clearly that would be incidental to the main duties of the committee. To hold that the committee can go further than to employ

mere clerks to carry out the duties which devolve upon it would be to place it above the legislature and permit it, as it has done in this case, to create a position carrying an annual salary of five thousand dollars in the absence of legislative authority or even in direct opposition to such authority. There is no such power in such a committee. The legislature alone can provide it with technical advisers, and having, as I read the statutes, done so, the committee must abide thereby.

The third question upon which I dissent is to holding that an emergency exists. An emergency is usually defined as:

"Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition." *State ex rel. Porter v. Superior Court,* 145 Wash. 551, 261 Pac. 90.

Here there was nothing whatsoever of that kind. What is thought to be an emergency is nothing but a state of mind. Nothing happened save that the majority of the committee concluded that it could not, or ought not to, rely upon the advice of its duly constituted technical adviser, hence it assumed to declare an emergency. If such a state of mind is an emergency within the law, then there is no limit to the powers of the various boards and committees appurtenant to the state government. Moreover, the attempt to create a permanent position carrying an annual salary on its face refutes the idea of an emergency.

For these and other reasons, which it seems unnecessary to mention in my opinion, the judgment appealed from should be reversed.

FULLERTON, C. J., concurs with TOLMAN, J.