[No. 3289.   Decided September 9, 1899.]

THE STATE OF WASHINGTON, *on the Relation of Dudley Eshelman,* v. NEAL CHEETHAM, *as State Auditor.*

CONSTITUTIONAL LAW—EXTRA COMPENSATION TO OFFICERS.

Under § 25, art. 2, of the constitution, which provides that "the legislature shall never grant any extra compensation to any public officer, agent, servant or contractor after the services shall have been rendered or the contract entered into," an allowance of extra compensation to employees of the legislature subsequent to the rendition of the services they were employed to perform is void.

SAME—PROHIBITION APPLIES TO EITHER BRANCH OF LEGISLATURE.

The constitutional limitation against the granting of extra compensation by the legislature to officers, employees or servants of the state, is applicable to either branch, as well as to the whole body, of the legislature.

SAME—PERFORMANCE OF EXTRA DUTIES.

The constitutional restriction against the legislature's granting extra compensation to officers or servants after the rendition of the services or the entering into the contract, and against increase of compensation of a public officer during his term of office does not prohibit the legislature, or either branch, from granting an employee compensation for services performed in addition to the regular duties for which he was employed.

LEGISLATIVE OFFICERS AND EMPLOYEES—HOURS OF LABOR.

When an employee enters the service of a legislature, he contracts to perform his duties whenever they are required to be performed, and he can not claim his employment is for the performance of his services during certain hours of the day nor for a certain number of hours per day, even though it may be customary in state offices to regard ten hours as constituting a day's work.

*Original Application for Mandamus.*

*Pritchard & Haight,* for relator.

*Thomas M. Vance,* Assistant Attorney General, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an application for a writ of mandamus to command the state auditor to issue warrants to

Dudley Eshelman and others for extra services performed during the sixth session of the legislature of the state of Washington.    The affidavit upon which the application is based shows that Dudley Eshelman was employed as secretary of the senate, Herbert N. DeWolfe as assistant secretary, M. G. McGuinnes as minute clerk, Oscar Ingram as stenographer, E. M. Hunter as docket clerk and M. E. Miller and E. J. Delbridge as committee clerks, in the senate of said legislature.    The employment began about the 9th day of January, 1899.    On the 13th day of January the senate adopted a resolution allowing the following sums per day to said employees, respectively:   Secretary, $5; assistant secretary, $4.50; minute clerk, $4; docket clerk, $4; committee clerk, $4; stenographer, $4.    On March 8, 1899, the senate adopted the following resolution:

" Whereas, the secretary and assistant secretary, the minute and docket clerks and the stenographers of this senate, in order to faithfully perform their respective duties, have been compelled to work on an average of fourteen hours per day,

Be it resolved by the senate that said clerks be allowed compensation for one-fourth time extra, in consideration of said extra work, and that the secretary draw warrants to cover such amounts."

On March 9, the last day of the session, the following resolution was adopted:

" Whereas E. J. Delbridge has acted during the session as the stenographer for the senate and the members thereof in addition to his other duties, and whereas Ed Miller has assisted the secretary of the senate in the performance of his duties in addition to his regular duties,

Therefore be it resolved by the senate that the said clerks above referred to (and the assistant sergeant at arms) be and they are hereby allowed additional salary to the extent of one-fourth of that allowed them heretofore, and be it further resolved that the secretary of the senate

be and they are hereby authorized to draw warrants for the amount due each."

The amounts so allowed said employees were as follows: Dudley Eshelman, $75; Herbert N. DeWolfe, $67.50; E. M. Hunter, $57; M. G. McGuinnes, $60; Oscar Ingram, $57; M. E. Miller, $56; E. J. Delbridge, $52. These claims have been assigned to Dudley Eshelman, the relator herein.

It is alleged in the petition that the said last mentioned allowances made in said resolution were a reasonable, and not more than a reasonable, compensation for said extra work, and that the certificates conveying the said last mentioned amounts and allowances and showing the same to be due to said employees, respectively, to and including said 9th day of March, 1899, duly signed by the president of the senate and countersigned by the secretary, have been duly presented to the respondent, but that respondent has refused to issue warrants thereon.    It was the opinion of the auditor that the issuing of these warrants would be in contravention of § 25, art. 2, of the constitution.    Said section is as follows:

" The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

It is asserted by the relator in his brief that, without constitutional limitation, the salary of a public officer can be increased or diminished at the will of the legislature; and for the purposes of this decision this proposition may be conceded.    It is also insisted that the grant forbidden is for extra compensation, while the allowance in question is not extra pay for work done, but pay for extra work done, and that it is not a grant of extra compensation, but the ascertaining and fixing of what is a fair and reasonable

compensation; that it is not an extra grant after service rendered or the contract has been entered into, but the settlement and allowance of a reasonable compensation in a case where the value of the services has not been ascertained or agreed upon in advance, but the service has been entered upon on the implied promise to pay a reasonable compensation.    We do not think that these deductions are legitimately drawn from the facts stated.    The value of the services evidently had been ascertained by the senate when it fixed the per diem of these employees. It must have been upon this ascertainment that the per diem was fixed, and it was agreed upon when it was so fixed by the senate and the employees accepted the offices and entered upon the discharge of their duties.

A great many authorities have been cited by the relator, all of which we have examined, but believe them not to be in point in this case.    Most of them are to the effect that under a constitution which provides that the compensation or fees of public officers shall not be increased during the term of office, and that the term of an office cannot be extended for a longer period than that for which such officer was elected or appointed, such provision embraced only officers which are elected or appointed for some specific or definite time, and that it has no application to employees of this kind.    Such is the case of *State ex rel. Kane v. Johnson*, 123 Mo. 43 (25 S. W. 855), where it was held that a municipal officer subject to removal at the pleasure of the council was not an officer, within the constitutional provision just above cited.    And many cases are cited to show that, under the provision of a constitution or statute which prohibits the increase of salary or term of office of public officers, such provision does not apply to officers who do not have a fixed term or a fixed salary.    We are unable to see the bearing of these decisions upon the case at bar.    Our constitution is two-fold.

The section referred to provides, as do the constitutions
cited by the cases above mentioned, that the compensation
of a public officer shall not be increased or diminished
during his term of office.    But this is not the provision in
the constitution that is infringed by the action of the
senate.    It is the first provision, viz., that the legisla-
ture shall never grant any extra compensation to any .
public officer, agent, servant or contractor after the same
shall have been rendered or the contract entered into; and,
whether or not the relator was a public officer, he certainly
was a servant of the state.    He entered into a contract with
the state, and extra compensation has now been voted him
for services which had already been rendered:    There is
no doubt of the power of the legislature to have, at any
time they determined that the officer was not sufficiently
paid, increased his per diem; but that is a different propo-
sition from the one involved here, where the compensation
was added after the services had been performed.    If the
whole disposition of the case were to depend upon the last
clause of the constitution in relation to public officers,
then there would have been no occasion for the insertion
of the first proposition.    The constitution in that respect
itself makes a distinction.

It is urged by the relator that he had a right to rely
upon the custom existing, to the effect that state officers
are not ordinarily called upon to work more than ten
hours a day; that that is a reasonable labor.    But the
history of legislative bodies is to the effect that no regular
hours of service are rendered either by members of the
legislature themselves or by their servants.    They may
sit two, four, six, or twelve hours a day, or all night, as
they see fit; and it frequently occurs that, during a great
many days of the session no service is rendered, either by
the members or by the employees.    As is well said by the
attorney general in his brief:

" When an employee enters the service of a legislature in either of its branches, he does so knowing of these eccentricities of legislative bodies, and he contracts, not to perform services during certain hours of the day, but to perform his services whenever they are required to be performed."

The other proposition of the relator, that the constitutional inhibition is one against the legislature and not against either branch of the legislature, we think is scarcely worthy of comment.    There can not be imputed to the members of the constitutional convention the weakness of prohibiting the entire legislature from exercising an abuse which it would permit either branch of the legislature to do separately.    While there is a great scarcity of authority on this particular question, there is one case which is directly in point,—*State ex rel. Field v. Williams,* 34 Ohio St. 218,—where it was held that a single branch of the general assembly could not by resolution allow compensation for extra services performed by a sergeant at arms, such compensation being inhibited by § 29, art. 2, of the constitution.    The provision of the constitution was as follows:

" No extra compensation shall be made to any officer, public agent or contractor, after the service shall have been rendered or the contract entered into."

It will be observed that the provision of the Ohio constitution was almost identical with ours, with the difference that in addition to the officers, agents, or contractors mentioned in the Ohio constitution, ours incorporates servants.    In speaking of this clause of the constitution the supreme court of Ohio said:

" This language is very broad, and was intended to embrace all persons who may have rendered services for the public in any capacity whatever, in pursuance of law, and in which the compensation for the services rendered is fixed by law, as well as persons who have performed or

agreed to perform services in which the public is interested, in pursuance of contracts that may have been entered into in pursuance of law, and in which the price or consideration to be received by the contractor for the thing done, or to be done, is fixed by the terms of the contract."

In that case the per diem of the officer was fixed, and the court further said:

" It is unnecessary to determine whether the relators, while acting as first and second assistant sergeants-at-arms, were or were not 'officers,' within the strict meaning of that word, as usually understood.   They were, while discharging their duties, serving the public at a fixed compensation, and were therefore, whether they be regarded as statutory officers or as public agents, within the meaning of the first clause of the section, which inhibits them from receiving extra compensation after the services were rendered."

It seems to us that the language of the constitution is so plain and comprehensive that there is little room for construction, and, if the language employed would not serve to prohibit the payment of more wages after services were rendered than was originally contracted for, it would be difficult to use language that would bring about that result.

The claim of Miller and Delbridge is confessed by the answer as resting upon a different state of facts.   The auditor will therefore issue a warrant to Miller for $56 and to Delbridge for $52; but, as to the other claims, they will not be allowed, and the writ will not issue.

GORDON, C. J., and FULLERTON, ANDERS and REAVIS, JJ., concur.