[Nos. 20680, 20681. *En Banc.* June 17, 1927.]

THE STATE OF WASHINGTON, *on the Relation of C. W. Clausen, Plaintiff*, v. ROLAND H. HARTLEY, *Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Geo. T. McCoy, Plaintiff*, v. SAMUEL J. HUMES, *Respondent.*[1]

[1] STATES (12)—OFFICERS—AUTHORITY AND POWERS—STATE BOARDS. In the absence of statutory restrictions, the state highway committee, composed of the governor, auditor, and treasurer, ex officio, may express its orders and decisions through the concurrence of a majority of its members, evidenced in writing over their signatures, and when so expressed, after opportunity to all members to consult, such expression is conclusive.

[2] STATES (12)—QUO WARRANTO (9) — STATE OFFICERS — JURISDICTION. The supreme court's only original jurisdiction in quo warranto is as to state officers; and the chairman and secretary of the state highway committee are mere servants of the committee, and are not state officers, within Const. Art. 4, § 4, there being no statutory provision for their appointment or existence.

[3] SAME (12)—STATE BOARDS—AUTHORITY AND POWERS—CHAIRMAN OF COMMITTEE. The fact that the governor is the first named state officer in Rem. Comp. Stat., § 10765, constituting the highway committee does not make him the chairman of the committee, parliamentary rules for legislative procedure having no application to state administrative boards, in the absence of any statutory regulations.

[1]Reported in 257 Pac. 396.

[4] SAME (12). A custom of former state highway committees to recognize the governor as the chairman of the committee has no binding force upon a committee in its selection of a chairman.

[5] SAME (12). Rem. Comp. Stat., § 6759, providing that the state highway engineer shall keep a record of all proceedings and orders pertaining to the matters under his direction does not constitute him secretary of the state highway committee or preclude the election of some other person to the position.

Original applications for writs of *quo warranto,* filed in the supreme court May 12, 1927, to determine the right to the offices of chairman and secretary of the state highway committee. Dismissed.

*The Attorney General, L. B. Donley,* and *E. W. Anderson, Assistants,* for relator.

*E. H. Guie* and *Coleman & Fogarty,* for respondent.

PARKER, J.—These are companion, original *quo warranto* proceedings in this court, commenced by informations filed by the *Attorney General;* one on the relation of C. W. Clausen, state auditor and ex officio member of the state highway committee, seeking the judgment of this court that,

" . . . the said respondent, Roland H. Hartley, be adjudged guilty of usurping, intruding into and unlawfully holding the office of chairman of the state highway committee, and that he be excluded from the same, and the privileges and franchises thereof, and that the said relator, C. W. Clausen, be entitled to have, hold and exercise said office of chairman of the state highway committee;"

and the other on the relation of George T. McCoy, seeking the judgment of this court that,

" . . . the said respondent, Samuel J. Humes, be adjudged guilty of usurping, intruding into and unlawfully holding the office of secretary of the state highway committee, and that he be excluded from the same, and the privileges and franchises thereof, and

that the said relator, Geo. T. McCoy, be entitled to have, hold and exercise said office of secretary of the state highway committee.''

The controlling facts and law of these controversies are largely common to both. We, therefore, consider them together.

The governor, state auditor and state treasurer constitute the state highway committee, which committee, by the terms of the administrative code, § 7 of the Laws of 1921, p. 13; Rem. Comp. Stat., § 10765 [P. C. § 4-7], has succeeded to all the powers of the state highway board. These powers are, speaking generally, to approve plans and award contracts for the improvement of state highways. The present members of the state highway committee are: Governor Hartley, State Auditor Clausen and State Treasurer Potts. During a period of several years past, the governor has, by common consent of the members of the committee, acted as chairman of the committee; that is, has presided in the usual manner in that capacity during the deliberations of the committee; its orders and decisions being arrived at, apparently, by the usual parliamentary practice, and evidenced by recorded minutes over the signatures of the governor as chairman and some other person as secretary. It does not appear, however, that the governor was ever formally elected as chairman by the members of the committee. Samuel J. Humes is the present state highway engineer. During a period of several years past, the state highway engineer has, by common consent, acted as secretary of the committee; that is, has written the minutes, recording the orders and decisions of the committee under its direction and signed the same as secretary; though it does not appear that the engineer has ever been formally elected secretary by the members of the committee. On April 30, 1927, the state highway

engineer, Humes, sent to the members of the commit-
tee a written request for a meeting of the committee at
his office on May 3, 1927. The committee met in
pursuance of this request, all members being present.
There are two records of minutes purporting to record
what occurred at that meeting. One of those records,
signed by Auditor Clausen as chairman and George T.
McCoy as secretary, reads, in so far as we need here
notice its language, as follows:

"May 3rd, 1927.

"The state highway committee met in the office of
the state highway engineer in the Insurance Building,
Olympia, Washington, at ten o'clock, a. m., Tuesday,
May 3rd, 1927; all members being present.

SECRETARY OF THE STATE HIGHWAY COMMITTEE

"It was moved by Mr. Clausen and seconded by Mr.
Potts that the state highway committee appoint a
secretary.

"Mr. Clausen put the motion. The motion was car-
ried, Mr. Clausen and Mr. Potts voting aye.

"It was moved by Mr. Clausen and seconded by Mr.
Potts that George T. McCoy be appointed secretary
of the state highway committee.

"Mr. Clausen put the motion. The motion was car-
ried, Mr. Clausen and Mr. Potts voting aye.

"Mr. Clausen declared George T. McCoy elected
secretary of the state highway committee.

"The meeting was then adjourned until 1 o'clock
p. m. of the same day.

"Pursuant to the recess of the state highway com-
mittee meeting at 1 p. m., May 3rd, 1927, at the office
of the state highway engineer in the Insurance Build-
ing at Olympia, Washington, all members being pre-
sent, at which time the following was had and done:

"At the opening of the meeting the governor made
the following statement:

" 'The meeting will now come to order. These con-
tractors are not at fault. Their money is being held
up here and they want decisions. My idea is that the

contracts are to be let now, and we can thrash out our
difficulties later.  Let us proceed.'

CHAIRMAN OF THE STATE HIGHWAY COMMITTEE

"Mr. Clausen, State Auditor and ex-officio member
of the state highway committee, moved that the com-
mittee elect a chairman of the state highway commit-
tee and Mr. Potts seconded the motion.  Governor
Roland H. Hartley, ex-officio member of the state high-
way committee protested.  The question was put by
Mr. Potts.  Mr. Potts and Mr. Clausen voted aye.  The
Governor did not vote.  Mr. Clausen declared the
motion carried.

"Mr. Potts, State Treasurer and ex-officio member
of the state highway committee, moved that Mr. Clau-
sen be elected chairman of the state highway commit-
tee.  Seconded by Mr. Clausen, Mr. Potts put the
question.  Mr. Potts and Mr. Clausen voted aye.  The
Governor did not vote.  Mr. Potts declared the motion
carried."

The other record, signed by Governor Hartley as
chairman and Samuel J. Humes as state engineer and
secretary, reads, in so far as we need here notice its
language, as follows:

"May 3, 1927.

"The state highway committee met in the office of
the state highway engineer at 10:20 a. m., Tuesday,
May 3rd, 1927, for the purpose of 'opening bids for
the improvement of several sections of highway and
to consider such other business as may come before
the committee.'  Governor Hartley, as chairman, pre-
sided over the meeting.

"Those present were Governor Hartley, chairman,
C. W. Clausen and W. G. Potts, members of the com-
mittee, Samuel J. Humes, state highway engineer and
secretary to the committee,  .  .  .

"The chairman, Governor Hartley, called the meet-
ing to order and asked for the reading of the minutes
of the previous meeting.  .  .  .  Mr. Clausen said it
was customary to elect a secretary of the state high-
way committee.  The Governor, quickly sensing the

situation, asked who was the last secretary elected. Mr. Clausen answerd that there had been no secretary since Mr. Allen. The Governor then ruled that he was out of order and that Mr. Humes was highway engineer and that he would run the affairs of the highway department and would act as secretary, the same as his predecessors, Mr. Hoover and Mr. Allen. Governor Hartley then instructed the clerk to proceed with the reading of the minutes.

. "Mr. Clausen objected further and moved that Mr. George T. McCoy be elected secretary of the state highway committee. This was seconded by Mr. Potts. The Governor ruled the motion out of order, and said, 'This department . . . is going to be run by this man who has been appointed highway engineer and he will run it fairly and well, if you will give him a chance. Mr. McCoy is not going to be secretary of this committee. . . . I am chairman of this committee and I am going to be chairman in reality as well as name.' The clerk was instructed not to record any of the motions of Potts and Clausen in the minutes of the meeting. . . .

"At 1:30 p. m., Governor Hartley . . . went to the highway engineer's office and found Messrs. Potts, Clausen, Humes, . . . Attorney General Dunbar and his Assistant, L. B. Donley.

"The meeting was called to order by the Governor, as chairman, who said, . . .

"Clausen: I have a motion to make first.

"Governor: State your motion.

"Clausen: I move that we now proceed to the election of a chairman for this committee.

"Governor: It is out of order.

"Clausen: You have heard the motion.

"Potts: I second the motion.

"Governor: The motion is out of order.

"Clausen: All those in favor signify by saying 'Aye.' (Clausen and Potts vote 'Aye').

"Potts: I move that Mr. Clausen be chairman of the state highway committee.

"Clausen: Second the motion.

"Governor: The motion is out of order.

"Clausen interrupted and tried to take over the meeting."

These facts we have summarized from what we conceive to be the material, uncontroverted allegations of the informations and answers in these proceedings. There may be some room for arguing that the two records of the committee's proceedings, above quoted, are somewhat conflicting in details as to what occurred at those meetings of the committee. We think, however, they both plainly evidence the will of the majority of the committee that Auditor Clausen shall act as chairman and that McCoy shall act as secretary of the committee, in place of the Governor and the highway engineer.

We now notice statutory provisions, which have been called to our attention by counsel for the respective parties, as bearing upon the powers of the state highway committee relating to the incumbency of the so-called offices of chairman and secretary of the committee. By chapter 186, Laws of 1909, p. 649, there was created the office of state highway commissioner, the incumbent to be an experienced civil engineer and to be appointed by the governor. That act also created a state highway board, to be composed of the state auditor, state treasurer and state highway commissioner. The powers and duties of the commissioner, as therein prescribed, are generally those of an engineer incident to the improvement and construction of highways. Some of his duties are stated in § 2 of that act, as follows:

"The commissioner shall be furnished with a suitable office in the capitol building, where his records shall be preserved, and said office shall be kept open at such times as the business of the commissioner shall require. He shall keep a record of all proceedings and orders pertaining to the matters under his direction

and copies of all plans, specifications and estimates submitted to him.  .  .  . ''   [Rem. Comp. Stat., § 6759.]

This particuar duty, it is insisted, made him the secretary of the board; that is, that he thereby was made the recorder and custodian of the minutes of the proceedings of the board.  There is no other language in that act in the least suggesting that the highway commissioner should be secretary of the high-way board; it being otherwise silent as to how the secretary of the board should be chosen, and even silent as to there being a secretary of the board.  It does not contain any language prescribing what member should be chairman of the board, or even that the board shall have a chairman.  That act was amended by chapter 47 of the act of 1911, p. 156, but only, so far as we need here notice, by increasing the membership of the board so that it should be composed of the governor, state auditor, state treasurer, state highway commissioner and a member of the railroad commission to be named by the governor.  The enactment of the administrative code, chapter 7, Laws of 1921, p. 13 *supra,* made further change by creating administrative committees and departments of the state government.  Section 7 of that act reads:

''The governor, the state auditor, and the state treasurer, *ex officio,* shall constitute the state highway committee, which shall have the power, and it shall be its duty, to exercise all the powers and perform all the duties now vested in, and required to be performed by, the state highway board.''

Thus, the present highway committee has succeeded to the powers and duties of the state highway board.  Among other departments created by that act, is that of the department of public works, headed by ''the director of public works,'' in which department there

were created the division of transportation, the division of public utilities and the division of highways. In the division of highways there was created the position of assistant director, to be known as the "supervisor of highways," the incumbent to be an experienced highway engineer. Section 28 of that act reads:

"The director of public works shall have the power, and it shall be his duty, through and by means of the division of highways:

"(1) To exercise all the powers and perform all the duties now vested in, and required to be performed by, the state highway commissioner; . . ." Laws of 1921, p. 21; Rem. Comp. Stat., § 10786.

Chapter 62, Laws of 1923, p. 192, §§ 1, 2, 3; Rem. 1927 Sup., § 10939-1 *et seq.,* worked another change, as follows:

"Section 1. The Governor shall appoint an official to be known as the state highway engineer, who shall hold office during the pleasure of the Governor.

"Sec. 2. The state highway engineer shall have power and it shall be his duty, to exercise all the powers and perform all the duties now vested in and required to be performed by the supervisor of highways and the director of public works through and by means of the division of highways.

"Sec. 3. The division of highways and the position of supervisor of highways are hereby abolished."

Thus, the incumbent of the present office of highway engineer has succeeded to the powers and duties of the director of public works and the supervisor of highways under the administrative code of 1921, p. 12, and the highway commissioner under ch. 186, Laws of 1909, p. 649, *supra.*

The diligence of counsel has not brought to our attention any statutory language specifying what member of the state highway board or its successor, the

state highway committee, shall be chairman of such board or committee, or that there shall be any such position or office 'as chairman of such board or committee; nor has there been brought to our attention any statutory language specifying who shall be secretary of such board or committee, or that there shall be any such office as secretary of such board or committee. We think there is no such language to be found in any of the statutes of this state. We further note that no statutory language has been called to our attention, and we think there is none, prescribing any method of procedure to be followed by the state highway board or its successor, the state highway committee, incident to the making of its orders and decisions. As to whether the former state highway board and its successor, the present state highway committee, should proceed by the usual parliamentary practice or by informal discussion, and as to the manner in which they should evidence their orders and decisions, our statutes are wholly silent.

[1] These controversies are manifestly only over methods of procedure within the committee, over form rather than substance, and over what seems to us an exaggerated importance, in the minds of members of the committee, of the so-called offices of chairman and secretary of the committee. It is apparent that there are no statutory restrictions upon the committee touching the manner of its procedure in making its orders and decisions, or in the manner of evidencing its orders and decisions. It follows, we think, that the committee may express its lawful orders and decisions through the concurrence of a majority of its members, and that, when it has so expressed itself, all members having opportunity to consult concerning the matter upon which it so expresses itself, such expression becomes conclusive as the action of the committee, which

may be evidenced in writing over the signatures of its chosen chairman or secretary, signed in behalf of the committee, or over the signatures of a majority of the committee, if it chooses not to have a chairman or secretary. That the majority of a public body, unrestrained by statute as is this state highway committee, controls in deciding all matters within its jurisdiction and power, is well settled law, by decisions of the courts of this country. *First Nat. Bank v. Mt. Tabor*, 52 Vt. 87, 36 Am. Rep. 734; *Cooley v. O'Conner*, 12 Wall. (U. S.) 391; *In re State Treasurer's Settlement*, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746; *Codman v. Crocker*, 203 Mass. 146, 89 N. E. 177; *State ex rel. Davis v. State Board of Canvassers*, 86 S. C. 451, 68 S. E. 676; *State ex rel Board of Regents of Normal Schools v. Zimmerman*, 183 Wis. 132, 197 N. W. 823; 22 R. C. L. 456.

[2] The jurisdiction of this court, which is invoked by these proceedings, is prescribed by § 4, of Art. 4, of our state constitution, as follows:

"The supreme court shall have original jurisdiction in . . . *quo warranto* . . . as to all state officers."

We have no other original *quo warranto* jurisdiction; so we are confronted with the inquiry, are the positions of chairman and secretary of the state highway committee, state offices. If this inquiry be answered in the negative, it follows that we have no jurisdiction to determine these controversies, and our inquiry need proceed no further.

It seems plain to us that the position of chairman of the state highway committee is not a state office. Such position is not named or provided for by any constitutional or statutory language, nor are any duties usually incident to such a position prescribed by any

constitutional or statutory language. The chairman of the committee, if the committee choose to have a chairman, is purely a creature and servant of the committee. The incumbent of that position, as such, has no authority whatever to decide any question of a public nature or exercise any function of government. He is the mere instrument, servant or mouthpiece of the committee. Of course, this observation is wholly foreign to the governor's rights and functions as a member of the committee. In Mechem on Public Officers, § 4, that learned author says:

"The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public;—that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer."

In the text of 22 R. C. L. 662, the law is well stated as follows:

"The most general distinction of a public office is that it embraces the performance by the incumbent of a public function delegated to him as part of the sovereignty of the state, that is, some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being to the incumbent, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer, although he may be an employee or a contractor."

This view of the law is supported by numerous decisions of the courts of this country, all in seeming harmony, in so far as applicable to a situation such as we have here presented. We notice, however, some further particular contentions, apparently considered

by counsel as taking these controversies out of the general rule stated by these authorities.

[3]   Contention is made that, because the governor is the first named member of the state highway board by ch. 47, Laws of 1911, p. 156, *supra,* and is the first named member of the state highway committee by the administrative code, Rem. Comp. Stat., § 10765, *supra,* we should take this as an expression of legislative will that he should be chairman of the committee; that is, that his chairmanship is thus created by statute.   The general parliamentary custom of considering the first named member of a committee of a legislative or other deliberative body as chairman of such committee is invoked.   This is not a committee of the legislature or of any deliberative body.   While it is called a committee, it is, in fact, an administrative board created by statute.   It is not a servant of the legislature as are legislative committees, but is a servant of the state, made so by formally enacted statute.   Whatever parliamentary custom may dictate as to who shall be chairman of an appointed committee of a legislative or other deliberative assembly, such custom, we think, is of no legal consequence in our present inquiry as to whether or not the governor is, by statute law, made chairman of the highway committee.   We think he has not been so made chairman of that committee.

[4]   Some contention is made that by the past continued custom of the members of the highway committee assenting to the governor being chairman of the committee, such assent has become, in effect, a practical construction by the members of the committee that the statute means that the governor shall be its chairman, and that such construction of the statutes should be recognized by the court.   This, we think, is unsound: First, because we see no room for so construing the statute; and second, because we do not think such

assent by the members of the committee amounted to anything more than an expression of the choice by its members as to who should be chairman, and hence merely their election of a chairman for the time being, without in the least impairing their right to, at any time, choose another chairman.

[5] It is contended that the highway engineer is, by law, the secretary of the committee. This contention is rested upon the language of § 2, Laws of 1909, p. 650; Rem. Comp. Stat., § 6759, above quoted, relating to the duties of the highway commissioner, the predecessor of the present highway engineer. The particular language to be noticed is:

"He shall keep a record of all proceedings and orders pertaining to the matters under his direction."

We do not see in this language an expression of legislative will that the engineer shall be the secretary of the committee. It may be conceded that this language means that the engineer shall keep in his office records of "proceedings and orders pertaining to the matters under his direction," but we do not think it means that he shall be secretary of the committee. By secretary, we mean the recorder of the proceedings of the committee. The incumbent of that position, we think, is the mere servant of the committee for the purpose of performing the physical work of making written record of its proceedings; that is, written record of its actions, resolutions or orders under its direction. The position of the secretary of the committee being of this limited nature, we are of the opinion that the position is not a state office.

Both proceedings are dismissed.

MACKINTOSH, C. J., FRENCH, ASKREN, MAIN, and MITCHELL, JJ., concur.

Tolman, J. (specially concurring).—With the holding that neither the chairman nor the secretary of the state highway committee is a state officer within the meaning of the constitution, I agree, and I therefore concur in the result.

But, with what else is said, I cannot agree. First, because it is wholly unnecessary to a decision of the case and is therefore wholly without force and effect; and second, because, in my humble judgment, it is in the main unsound.

The majority say of the workings of the committee, "its orders and decisions being arrived at, apparently, by the usual parliamentary practice, and evidenced by recorded minutes over the signatures of the governor, as chairman, and some person as secretary."

This particular body, like all bodies which function by majority vote of its members, must of necessity act under parliamentary usages, and though, where all are agreed, informalities, and even some irregularities, will be overlooked, yet, when differences arise, some recognized parliamentary practice must be followed, or interminable confusion and disorder will arise, and the rights of a minority may be denied. So here, recognizing the right of a majority to rule, that majority must, in order to make its will effective, proceed with some sense of order, which clearly was not done in this case. The minutes set up by the opinion of the court clearly show that at the meeting referred to the committee was fully equipped with at least a *de facto* chairman and a *de facto* secretary. No attempt was made to remove either, and in spite of the fact that no vacancies existed, motions were made to elect, which were declared out of order by the presiding officer. All parliamentary authority recognizes the right and power of a presiding officer to so rule, and the only recourse is to appeal from the ruling of the

chair.  Not having done this, the majority of the committee were out of order, and their further acts were disorderly and of no avail.

A majority may always rule in an orderly way. Therefore, there is no occasion for the court to recognize and approve disorder, even inferentially.

HOLCOMB, J., concurs with TOLMAN, J.

FULLERTON, J. (concurring).—I agree with the conclusion of the majority that this court is without original jurisdiction over the subject-matter of this proceeding, and therefore concur in the order directing its dismissal.

The collateral matters discussed, I cannot conceive are before us, and on them I express no opinion.