[No. 25953.   Department One.   April 20, 1936.]

THE STATE OF WASHINGTON, *on the Relation of J. E. Heffernan, Respondent,* v. THE CITY OF HOQUIAM *et al., Appellants.*[1]

*James P. H. Callahan,* for appellants.

*James P. Neal,* for respondent.

[1] Reported in 56 P. (2d) 1012.

STEINERT, J.—This is an action in mandamus to compel the issuance of city warrants in payment of a balance alleged to be due and owing for services rendered to the city by a police officer. The court made findings of fact and conclusions of law, based upon which judgment was entered granting a peremptory writ of mandamus as prayed for. The city and its clerk have appealed.

The case was tried upon an agreed statement of facts, the substance of which we quote as follows:

The appellant city of Hoquiam is a municipal corporation of the second class, and as such is governed by Rem. Rev. Stat., §§ 9006-9089. The elective officers of the city consist of a mayor, twelve councilmen, treasurer, city clerk, and police judge. All other officers of the city are appointed by the mayor, subject to confirmation by the city council. No term is fixed for any office of the city, except that of mayor and city councilman. Salaries of all officers are fixed by the city council, subject to a maximum annual figure prescribed by statute for mayor, councilman, treasurer, city clerk, city attorney, and chief of police. The statute provides that the salary or compensation for "no officer" of such city shall be increased or diminished during *his term of office*. The statute further provides that the police force of such city shall consist of a *chief of police* and such number of *policemen* as shall from time to time be fixed and determined by the city council; and that the mayor, with the consent of the council, shall appoint the policemen and all subordinate officers of the city and may, for any cause, remove the same, with the consent of the council.

January 12, 1927, ordinance No. 1216 of the city was passed and approved. The ordinance enumerated the officers and employees of the city, prescribed their duties, and designated the amounts of their respective

salaries. The officers included in the police depart-
ment were a chief of police, sergeant, desk sergeant,
and police matron. The chief of police was authorized
to appoint such number of policemen as should be pro-
vided by the city council, subject to the approval of
the mayor and council. The salary of the chief was
fixed at $125 per month, that of the sergeant and desk
sergeant, respectively, at not to exceed $160 per month,
and that of policeman at not to exceed $140 per month.
The ordinance further provided that the mayor might,
with the consent of the city council, at any time remove
any appointive officer of the city.

On or about January 7, 1929, the relator, J. E. Hef-
fernan, was appointed *patrolman* in the police depart-
ment, by the mayor, and duly qualified as such. Janu-
ary 6, 1930, the relator was appointed *captain* of the
police department by the same mayor, and his appoint-
ment was confirmed by the council. However, ordi-
nance No. 1216, *supra,* which was still in effect, did not
provide for the office of *captain* in the police depart-
ment, nor did relator take an oath of office as captain,
although he served in that capacity throughout the
year 1930.

In the fall of 1930, the city council adopted a budget
for the expenses of the city during the year 1931. In
the budget the sum of $1,920 [or $160 per month] was
allotted for ''Captain of Police.''

On January 5, 1931, a new mayor assumed office.
Although relator received no formal appointment from
the new mayor or from the city council or chief of
police at or after that time, he nevertheless continued
to serve as captain of police throughout the year 1931.

During the first four months of 1931, relator received
monthly a warrant for $160, as provided in the recent
budget. In the meantime, however, it had been found
that the outstanding taxes and estimated receipts from

other sources would not be sufficient to meet the current expenses. Accordingly, on April 13, 1931, the city council passed ordinance No. 1409, effective May 1, 1931, fixing the compensation to be paid the various officers and employees of the city, consolidating certain positions for purposes of economy, and repealing all ordinances and parts of ordinances in conflict therewith. That ordinance provided that the *captain* of police should receive a salary of $144 per month. The ordinance further contained a section providing that each officer and employee of the city whose salary had been reduced should be required, monthly, upon delivery of his salary or wage warrant, to sign a statement fully releasing the city from any or all claims; and that, upon his refusal to so sign, his employment should cease.

During the remainder of 1931, the relator, serving as captain of police, received each month a warrant for $144, the reduced amount, and at the same time signed the required release. The reduction, it will be observed, amounted to sixteen dollars per month, or a total of $128 during the year 1931.

Thereafter, on October 5, 1931, the city council passed ordinance No. 1412, again fixing the compensation to be paid the various officers and employees of the city. By that ordinance, the salary of captain of police was fixed *at not to exceed* $144 per month. Shortly thereafter, the budget for 1932 was made up and approved by ordinance. The budget allowed the sum of $1,728 [or $144 per month] for captain of police. Relator continued to serve as captain after January 1, 1932, but without any formal appointment or further qualification.

During the first four months of 1932, relator received each month a warrant in the sum of $144 and signed the required release. Faced with a similar con-

dition respecting receipts and current expenses, despite the previous reduction in salaries, the city council, on April 25, 1932, passed another ordinance, No. 1421, effective May 1, 1932, fixing the compensation of officers and employees and repealing all ordinances in conflict therewith. By that ordinance, the salary of captain of police was fixed *at not to exceed* $122.40 per month. At the same time, ordinance No. 1422 was passed, readjusting the budget for 1932 in accordance with the provisions of ordinance No. 1421.

From May 1 to December 31, 1932, relator received a warrant for $122.40 each month. This resulted in a reduction of $21.60 per month for eight months, or a total of $172.80.

In October, 1932, the budget for 1933 was made up and approved by ordinance. The budget allowed the sum of $1,468.80 [or $122.40 per month] for captain of police, which position relator continued to hold, under a third mayor, during the year 1933, but without any formal appointment or further qualification.

For the month of January, 1933, relator received a warrant for $122.40. Faced with a continuing depression and the apparent inability to meet the current expenses provided in the budget out of the possible receipts, despite the two reductions in salaries already made, the council determined to make a further reduction to conform to the income of the city. Accordingly, on January 30, 1933, the mayor and council adopted resolution No. 547, appropriating fixed amounts for the various departments of the city for the remainder of the year 1933. In the appropriation for the police department, there was allotted for the salary of captain of police, for the remainder of the year, the sum of $1,009.80, or $91.80 per month for eleven months.

Warrants in the latter amount were received by the relator during the eleven-month period, pursuant to

his signing the required release. The reduction thus amounted to $30.60 for eleven months, or a total of $336.60.

Relator left the employ of the city in June, 1934, and in August of that year filed a claim for the alleged unpaid portions of his salary, totaling $637.40. His claim is based upon the contention that he was entitled to a salary of $160 per month throughout the year 1931, $144 per month throughout the year 1932, and $122.40 per month throughout the year 1933, without any intermediate reductions.

The question before us is whether the city council could lawfully reduce relator's salary *within* the yearly periods of 1931, 1932 and 1933, respectively. This question involves the application and construction of that part of Rem. Rev. Stat., § 9017 [P. C. § 725], which reads:

"The salary or compensation of no officer of such city shall be increased or diminished during his term of office."

There are at least two reasons, in our opinion, why the council had the right to reduce the salary in the manner that it did.

In the first place, relator, acting as captain of police, was not an officer of the city, within the meaning of the statute. While the council, under the power vested in it by Rem. Rev. Stat., § 9007 [P. C. § 715], *could* have created the office of captain of police, it did not, in fact, do so. All that the council did was to prescribe a monthly salary to be paid an appointee having that title, but the council did not *create such office*. No question is raised here concerning the validity of the payments actually made to relator while serving in that capacity, and we are not called upon to pass on that question. It may also be true that the acts of the relator, while serving as captain of police, would be

56

considered as having been clothed with official author-
ity, but with that question, likewise, we are not here
concerned. The only question here is whether relator
is, by virtue of any *office* held by him, entitled to re-
ceive more than he has actually been paid.

One claiming the salary of a municipal officer must
point to a provision of the law which, with certainty
and beyond doubt, authorizes it. *State ex rel. Cornell
v. Smith*, 149 Wash. 173, 177, 270 Pac. 306; *Bell v.
Mabton*, 165 Wash. 396, 402, 5 P. (2d) 514.

As authority for his contention, relator relies upon
the two cases just cited and also upon the following:
*Bartholomew v. Springdale*, 91 Wash. 408, 156 Pac.
1090; *Rhodes v. Tacoma*, 97 Wash. 341, 166 Pac. 647;
*State ex rel. McMillan v. Miller*, 108 Wash. 390, 184
Pac. 352. But each of those cases was predicated upon
the fact, or else upon the specific holding therein, that
an office had been created. The incumbent was there-
fore held to be entitled to the emoluments of the office.
In this case, as we now hold, there was no office upon
which the claim could be based.

In the next place, even if we assume, for the
sake of argument, that there was an *office* of captain of
police, it was an office having no term. It was, in any
event, appointive merely, from which the incumbent
thereof could be removed at any time by the mayor
and council. Rem. Rev. Stat., § 9065 [P. C. § 761].
The inhibition against the reduction of salaries of offi-
cers relates only to those having *terms* of office and
not to those whose tenure is subject to the will and
pleasure of the mayor and council.

Under subdivision 1 of Rem. Rev. Stat., § 9034
[P. C. § 742], the city council has the power and au-
thority to make and pass all ordinances, orders and
resolutions not repugnant to the constitution of the
United States, the constitution of the state, or the pro-

visions of the act relating to cities of the second class, necessary for the municipal government and the management of the affairs of the city, and, under subdivision 32 of the same section, to create and establish a city police, prescribe their duties and compensation, and provide for the regulation and government of the same, and, under subdivision 56, to provide for the general welfare of the city. Under these provisions, the mayor and city council had ample authority to reduce the salaries of appointees having no fixed terms of office, in the manner in which the reductions were made in this case.

The case of *State ex rel. Knez v. Seattle,* 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905, recently decided, and relied on in this instance by relator, has no application here. In that case, the salaries of city firemen had been fixed at definite amounts by an initiative measure, which had been referred to the people, and it was held that, under the provisions of the city charter, a referendum ordinance could not be altered, amended or repealed by any less authority than that which called it into being. We have no such situation presented in this case.

The later case of *State ex rel. Pike v. Bellingham,* 183 Wash. 439, 48 P. (2d) 602, also relied on by relator, is still less in point here, because, in addition to the fact that the case was controlled by the *Knez* case, it also appears therein that the charter there involved contained a specific provision to the effect that each year's service of an officer or appointee was to be considered as a term.

The respondent contends that his salary was established by a budget ordinance for each particular year, and could not thereafter be changed during the period for which it was fixed. The purpose of the

budget law, Rem. Rev. Stat., §§ 9000-1 to 9000-11 [P. C. §§ 890-1 to 890-11], inclusive, so far as expenditures are concerned, is not to fix amounts which the city *must* expend, in any and all events, but rather to furnish estimates of what it may be *required* to expend. The estimates of expenditures, when finally adopted, constitute the appropriations of the city for the ensuing fiscal year and simply mark the limit of the expenditures. They do not control the council in matters of expenditures over which that body has full supervision, such as fixing salaries of appointees removable at will.

The relator further contends that, in any event, *the city council could not, by resolution No. 547,* readjust the budget for 1933 or change the salaries which had been previously fixed by ordinance. It will be remembered that the preceding ordinance, No. 1421, passed in April, 1932, fixed the compensation of certain appointive officers and appointees, including relator, not in invariable amounts, but "at not to exceed" certain amounts. The ordinance established a maximum, but not the minimum, to be paid such officers and employees. The council could not pay more, but it might pay less, as it should, from time to time, determine and as the necessities of circumstances required. Conceding that the council could not vary the compensation, once fixed, of an officer holding for a *term,* it was not thus limited with respect to those whose tenure was subject to the will of the council. The resolution did not seek to repeal or amend the previous ordinance, but operated in conformity with its authority and limitations.

In our discussion thus far, we have not considered the validity, or invalidity, of the releases signed by the relator, nor is it necessary to consider that question. The council having the power to fix relator's

salary from time to time, his consent thereto, whether under duress or not, is immaterial.

The judgment is reversed, with direction to the trial court to dismiss the action.

MILLARD, C. J., GERAGHTY, MITCHELL, and TOLMAN, JJ., concur.