[No. 34449. *En Banc.* January 23, 1958.]

THE STATE OF WASHINGTON, *on the Relation of John J. O'Connell, as Attorney General, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

[1]Reported in 320 P. (2d) 1086.

*Carlson, Newlands & Reha* and *C. John Newlands, Special Assistant Attorney General,* for relator.

*Elvin J. Vandeberg, Assistant Attorney General,* and *Roger C. Walsh, Special Assistant Attorney General,* for respondent.

ROSELLINI, J.—In this proceeding, the relator seeks a writ of mandate prohibiting the state auditor from issuing certain warrants to John L. O'Brien, as speaker of the house of representatives, out of the appropriation made under chapter 300, p. 1223, Laws of 1957, for "Legislative Expense, Thirty-fifth Legislature," pursuant to a resolution of the house of representatives providing for payment to the speaker of four hundred dollars per month additional compensation for extra work involved in performing the interim duties of his office.

Under Art. IV, § 4, of the state constitution, this court has original jurisdiction in mandamus as to all state officers; and in *State ex rel. LaFollette v. Hinkle*, 131 Wash.

86, 229 Pac. 317, we held that mandate may prohibit the doing of an act as well as command it to be done.

The relator objects to the issuance of the warrants on the ground that the resolution authorizing them contravenes certain provisions of the constitution. The relator's right to bring this suit is sustained by the fact that, as the duly elected, qualified, and acting attorney general of the state of Washington, it is his duty to prevent the disbursement or use of public funds in violation of the constitution or statutes of the state of Washington.

This matter is before this court on an agreed statement of facts, which shows that John L. O'Brien was elected a member of the house of representatives to serve from "January 7, 1957, to the second Monday of January, 1959," and was elected speaker of the house on January 14, 1957. His term of office as speaker commenced on January 14, 1957, and he will hold this office until the convening of the next regular session unless the house shall, in the interim, elect a different speaker.

The thirty-fifth session of the legislature of the state of Washington enacted a statute which now appears as chapter 300, p. 1201, Laws of 1957, entitled:

"AN ACT making appropriations and reappropriations for the purchase, condemnation and improvement of land, construction of buildings and improvements at designated state institutions; for the payment of salaries of certain officers and employees of the state and for the operation, maintenance and other expenses of certain state institutions, departments and offices; for the relief of certain individuals, corporations, counties and municipalities; for refunds and for deficiencies and for emergencies, and for appropriation of revolving funds, and for purposes specified in certain acts of Congress, and for miscellaneous purposes designated for the fiscal biennium beginning July 1, 1957, and ending June 30, 1959, except as otherwise provided; defining terms, limiting allowances and payments, and declaring that this act shall take effect immediately."

This statute contains the following provision in § 2, p. 1223:

"For Legislative Expense, Thirty-fifth Legislature: From the amount hereby appropriated the Senate shall not expend more than nineteen thousand ninety-one dollars; the House of Representatives shall not expend more than thirty-four thousand two hundred fifty-one dollars: *Provided*, That no portion of this Appropriation shall be expended by or for the Legislative Council, the Legislative Budget Committee, or any other Legislative Interim Committee. . . ."

On the 11th day of March, 1957, the house of representatives adopted the following resolution, submitted to it by its committee on rules and order:

"*Resolved* That the Speaker be allowed additional compensation in the amount of $400 per month to compensate for the extra work and expense required in performing the duties of the Speaker of the House of Representatives in completing the work of the 35th session of the Legislature and for time spent on interim duties;

"*And be it further resolved*, That the Chief Clerk be and he is hereby authorized and directed to make out the necessary vouchers upon which warrants for the foregoing expenses and expenditures shall be drawn."

The first warrant was drawn under this authorization on April 16, 1957, on a voucher claiming $219.30 for interim duties and expense from March 15 to March 31, 1957. Subsequent vouchers in the amount of four hundred dollars each were honored until the month of September, when the attorney general's demand that the auditor refrain from issuing further warrants was refused. On September 6, 1957, the alternative writ in this proceeding was issued.

The agreed statement of facts reveals that the house of representatives has, by resolution, habitually allowed extra compensation to the speaker for his duties in closing the affairs of the house after the session adjourned. Prior to 1937, this compensation was in the form of an extra per diem allowance for the time required to complete the work of the session. For the regular sessions of 1949, 1951, and 1953, the speaker was allowed six hundred dollars "to compensate for the additional work and expense required in performing the duties of the speaker of the House of Representatives" and twenty-five dollars per day compensation for each day of his

time required to complete the work of the session. For the extraordinary session of 1951, he was allowed six hundred dollars extra compensation. In 1955, he was allowed a lump sum of nine hundred dollars plus a per diem of twenty-five dollars for the time required to complete the work of the session. In 1957, the house, by the resolution under consideration in this suit, provided compensation at the rate of four hundred dollars per month during the interim.

It is the position of the relator that the resolution in question provides an increase in compensation to a public officer during his term in office, and therefore contravenes the following provisions of the state constitution:

Article II, § 25. "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

Article III, § 25. "No person except a citizen of the United States and a qualified elector of this state shall be eligible to hold any state office, . . . The compensation for state officers shall not be increased or diminished during the term for which they shall have been elected. The legislature may, in its discretion, abolish the offices of the lieutenant governor, auditor and commissioner of public lands."

Article XXVIII, amendment 20, § 1. "All elected state officials shall each severally receive such compensation as the legislature may direct. The compensation of any state officer shall not be increased or diminished during his term of office, except that the legislature, at its thirty-first regular session, may increase or diminish the compensation of all state officers whose terms exist on the Thursday after the second Monday in January, 1949."

 It should be borne in mind that we are not concerned in this case with an act of the legislature, which would be entitled to a presumption of constitutionality, but with a resolution of one branch of the legislature. If the compensation provided in the resolution is to be paid to the speaker as a legislator, the act of the house in authorizing it was in violation of Art. XXVIII, amendment 20, § 1, which

provides that all elected state officials shall receive such compensation as the legislature may direct. *Expressio unius est exclusio alterius.* The legislature as a whole, and not its component branches, is authorized to fix the compensation of elected state officials. A single house is not the legislature. *State ex rel. Hamblen v. Yelle,* 29 Wn. (2d) 68, 185 P. (2d) 723. And the legislature has not seen fit to provide additional compensation to the representative who performs the duties of the speaker.

 That it was the intent of the members of the house to compensate the speaker, as a legislator, is evident from the language used in the resolution. The payment is termed "additional compensation" and is for the "extra work and expense" involved in performing the duties of the speaker. The respondent maintains that the compensation is paid to the speaker not as a member of the house but as an employee or servant of the house; that the duties which he performs could be performed by a nonmember, even though the house rules provide that the speaker shall vote on all issues. But, if the respondent is correct, and the duties of the speaker are not duties which a legislator may perform within the scope of his office, then the speaker, when he accepts this position, must necessarily abdicate his office as a legislator; for the duties of speaker must be performed during the session as well as after it. The concept of the speaker as an employee of the house does not commend itself to us, nor does the language of the resolution indicate that the members of the house regarded him in this light.

The constitution provides that each house shall elect its own officers. Art. II, § 10. The respondent points out that the constitution does not specify that these officers shall be elected from within the ranks of the legislative body; and if an outsider were elected, he maintains, he would be entitled to compensation. While it is conceivable that the house might, for some reason, choose a presiding officer who was not a member, it seems unlikely, and thus far, it has apparently never deemed it wise or expedient to do so. At any rate, we are not concerned here with the question of

whether an outsider elected to this position would be entitled to compensation, but only whether a member elected to the position can be awarded additional compensation by house resolution. Whether the legislature could validly provide additional compensation for the speaker is likewise not a question presently before us.

The respondent cites authorities to the effect that, unless prohibited by constitutional or statutory provisions, a person may hold two offices if the performance of the duties of either does not, in any way, interfere with the duties of the other, and he is entitled to the compensation fixed by law for both offices. *Keeting v. Public Utility Dist. No. 1*, 49 Wn. (2d) 761, 306 P. (2d) 762; *Congdon v. Knapp*, 106 Kan. 206, 187 Pac. 660; *United States v. Saunders*, 120 U. S. 126, 30 L. Ed. 594, 7 S. Ct. 467; *State ex rel. Chatterton v. Grant*, 12 Wyo. 1, 73 Pac. 470.

As we have already noted, however, the duties of the speaker, if they are not the duties of a legislator, must necessarily conflict with the speaker's legislative duties, since they must be performed for the most part during the session, when a legislator is supposed to be devoting his full time and attention to his duty to represent his constituents and participate in the enactment of the laws of this state. Furthermore, as we have observed, there is no compensation for the speaker fixed by law.

The respondent argues convincingly that the speaker of the house is not, as such, a public officer and, as such, subject to the provisions of Art. II, § 25 of the constitution. He draws an apt comparison between the positions of speaker and a committee chairman, about which this court has said:

"It seems plain to us that the position of chairman of the state highway committee is not a state office. Such position is not named or provided for by any constitutional or statutory language, nor are any duties usually incident to such a position prescribed by any constitutional or statutory language. The chairman of the committee, if the committee choose to have a chairman, is purely a creature and servant of the committee. The incumbent of that position, as such, has no authority whatever to decide any question of a public

nature or exercise any function of government. He is the mere instrument, servant or mouthpiece of the committee." *State ex rel. Clausen v. Hartley*, 144 Wash. 135, 257 Pac. 396.

The question before the court in *State ex rel. Clausen v. Hartley* was whether the chairman of the state highway committee was a state officer, to whom a writ of *quo warranto* could be issued. The court was not concerned with the question of whether the chairman (the governor or the state auditor) was entitled to be compensated out of the public treasury for performing the duties of chairman, in the absence of constitutional or statutory authority therefor.

█ We agree, however, that the speaker of the house bears a very similar relation to the body which elects him as does the chairman of a committee. The duties of neither are antagonistic to membership in the body. Rather these leaders perform duties which are necessary to the efficient functioning of their respective bodies and any person appointed or elected, or appointed to membership in such a body, must contemplate that he may be called upon to perform these duties.

The respondent calls attention to the fact that the legislature has always made appropriations for and authorized the payment of amounts due the officers and employees of each branch, and that the house has always construed these acts as authorizing payment of compensation to the speaker. He points out that, as we said in *State ex rel. Todd v. Yelle*, 7 Wn. (2d) 443, 110 P. (2d) 162, a legislative interpretation extending over a period in excess of half a century should have great weight with the court.

██ Assuming that an authorization to draw warrants for payments due to officers of the house can be construed as an authorization to pay the speaker additional compensation for his additional services, the fact remains that if such compensation is to be paid, the constitution provides that the amount must be fixed by the legislature. This provision is clear and unambiguous, and not open to construction.

Consequently, while the authorization is valid in so far as it pertains to expenses of the house,[2] it is void in so far as it can be construed as an attempt to delegate to the house power to fix the compensation of one of its members. A power which the constitution vests solely in the legislature cannot be delegated to or exercised by any other body. *State ex rel. Shorett v. Reeves,* 25 Wn. (2d) 114, 169 P. (2d) 704.

The respondent insists that the additional compensation is justified because of the fact that the speaker has duties to perform during the interim and duties which other legislators do not have. He cites *State ex rel. Seattle v. Carson,* 6 Wash. 250, 33 Pac. 428, holding that, where new and extrinsic duties are added to the office after the office is assumed, the salary attached to the office may be increased without violating the constitutional provision against increasing or diminishing the compensation of public officers during their term of office. Assuming that his contention is true, and that the duties of the speaker do justify an increase in compensation, the fact remains that the legislature has not provided for such an increase.

Our extensive research has revealed many cases involving the validity of the appointment or election of legislators to offices or positions separate from the legislature during their term as legislators; but it has produced only one case wherein an attempt to provide extra compensation to an officer of a legislative branch, was brought to the attention of a court. This is the early case of *State ex rel. King v. Hallock,* 16 Nev. 152 (1881), wherein the state legislature had passed an act directing the state controller to issue his warrant in favor of a senator in payment for his services as president *pro tem.* The Nevada court held that this was an attempt to increase the compensation of a member of the legislature during his term of office and, as such, was a violation of a provision of the constitution of that state, which was very similar to ours.

---

[2]*Not to be confused with Laws of 1957, chapter 4, p. 10, providing for payment . . . "in lieu of subsistence and lodging . . . " State ex rel. Todd v. Yelle, supra.*

■ ■ It is true that the legislature, or a branch thereof, may grant extra compensation to an employee who performs services in addition to his regular duties. *State ex rel. Eshelman v. Cheetham,* 21 Wash. 437, 58 Pac. 771. But as we have heretofore concluded, the services of the speaker are rendered, not as an employee of the house, but as a member thereof. This court has also approved the creation by statute of legislative committees authorized to sit during the interim between sessions and empowered to take testimony, compel the attendance of witnesses, punish for contempt, and report its findings to the next legislature, and has approved the payment of expenses incurred by legislators sitting on such committees. *State ex rel. Hamblen v. Yelle, supra.* But it has never said that such legislators are entitled to additional compensation. Indeed, so far as we can ascertain, the legislature has never attempted to provide extra compensation for such interim duties.

■ The duties of the speaker are no more distinct from his office as legislator than are those of a member of an interim committee. Both spend, perhaps, more time on these extra legislative duties than other members and perform services not required of other members, but the duties of both inhere in the office and promote the legislative function.

■ We hold that a single branch of the legislature is without authority to provide additional compensation to one of its members when he serves as an officer, and that the resolution authorizing payment of four hundred dollars per month to the speaker during the interim is void, in so far as it provides such compensation.

Nothing in this opinion should be construed as a criticism of the speaker nor of the members of the house of representatives for providing compensation to the speaker for closing the affairs of the house after adjournment. It must have appeared to the members as a tradition, since the long-established practice never before has been challenged.

This holding does not preclude the speaker from obtaining reimbursement for expenses incurred in the performance of his duties. We express no opinion on the question of

the power of the legislature, as a body, to provide such additional compensation, since that question is not before us.

The writ will issue.

HILL, C. J., MALLERY, DONWORTH, WEAVER, OTT, FOSTER, and HUNTER, JJ., concur.

FINLEY, J. (dissenting)—The functions and over-all duties of the speaker of the house of representatives are certainly comparable, if not greater, than those of the lieutenant governor, except for the infrequent occasions when the latter official functions as the chief executive of the state because the governor is absent from the state temporarily for a few hours or days. The compensation of the lieutenant governor is five hundred dollars per month. The compensation of the speaker of the house is one hundred dollars per month in his capacity as a member of the legislature. Under the house resolution which is questioned in this case, the speaker of the house would receive an additional sum of four hundred dollars per month for "extra work and expenses required in performing the duties of the speaker of the house of representatives in completing the work of the thirty-fifth session of the legislature, and for time spent on interim duties."

The fact that two state officials receive equal pay for comparable work, duties, and responsibilities seems not only proper but should be shocking to no one. In any event, the only basic question before us is one of law; that is, whether or not the house resolution authorizing four hundred dollars per month as compensation for the speaker clearly violates any provisions of our state constitution. Unless it does so, the instant case, in my opinion, is certainly one where the members of the court could well exercise judicial self-restraint by leaving the handling of the particular problem and the determination of the speaker's compensation with the legislature.

The legal conclusion reached by the majority is that the house resolution here in question is repugnant to Art. XXVIII, amendment 20, § 1, of our state constitution. The reasoning of the majority is that the speaker is a member of

the legislature; that his functions and duties as a legislator and as the speaker of the house are *inseparable*. From this premise or assumption, the majority reasons that the speaker is and must be an *elected state official* within the purview of Art. XXVIII of the constitution; that he cannot logically be anything else; and, finally, that his compensation can be fixed only by joint action of both houses of the legislature. I do not agree.

Art. XXVIII, amendment 20, § 1, of the state constitution provides:

" . . . All elected state officials shall each severally receive such compensation as the legislature may direct. The compensation of any state officer shall not be increased or diminished during his term of office, except that the legislature, at its thirty-first regular session, may increase or diminish the compensation of all state officers whose terms exist on the Thursday after the second Monday in January, 1949."

It seems to me that the speaker of the house realistically has a dual status: (a) as a member of the legislature, elected by the voters; (b) as the presiding officer of the house of representatives, elected by the members of that body. I simply cannot agree with the premise that the indicated *dual status* of the speaker of the house must be telescoped and considered conceptually as one and the same position. I say this well aware of the fact that it is always the one and same individual who performs in the above-mentioned dual capacities. Thus, I reach the conclusion that the speaker, in his capacity as such, is not an *elected state official* prescribed by the above constitutional provision (Art. XXVIII), and that compensation for the services as speaker of the house need not be fixed by joint action of both the house and the senate, but may be constitutionally determined (as in the instant case) by action of the house of representatives.

In the first legislative session of this state after the adoption of the state constitution, a question was raised as to the constitutionality of a house resolution providing additional compensation for the speaker of the house. However, the

resolution was passed. The member of the house who moved its adoption had participated in the drafting of our state constitution. Since that first session, it has been a consistent legislative practice for the house to provide by resolution for additional compensation for the speaker for services performed as such. This legislative practice for half a century involving an interpretation of our state constitution should be accorded great weight and, I think, should be followed by this court. *State ex rel. Todd v. Yelle* (1941), 7 Wn. (2d) 443, 110 P. (2d) 162.

The majority opinion is not based on the ground that the resolution violates the constitution by increasing the compensation of a state official during his term of office, but this point deserves comment. In *State ex rel. Brown v. Blew* (1944), 20 Wn. (2d) 47, 145 P. (2d) 554, we held that a court reporter is not a public officer. We said that five elements are essential to make his position a public office.

" ' " . . . (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional. . . ." ' "

I do not believe the office of speaker of the house meets the above five tests. He is an officer only of the house of representatives.

There is a further reason why the resolution is not repugnant to the constitutional prohibitions against raising or decreasing the salary of a public officer during his term of office; ". . . The inhibition against the reduction of salaries of officers relates only to those having *terms* of office and not to those whose tenure is subject to the will

and pleasure . . ." of the appointing power. *State ex rel. Heffernan v. Hoquiam* (1936), 186 Wash. 50, 56 P. (2d) 1012. The term of office of the speaker of the house is fixed only by the house rules; it is subject to change at any time.

It is my opinion that the functions and the status or office of the speaker (a) as such, and (b) as an elected member of the legislature, are divisible and separate; therefore, that the speaker in his capacity as such is not an *elected state official* as those words are used in Art. XXVIII of the constitution. I believe that the speaker in his capacity as such is not a public officer or state official as those words are used in Art. II, § 25, and Art. III, § 25, of the constitution, and that the resolution fixing his compensation at four hundred dollars per month is not repugnant to the constitution.

In considering this case the question has arisen as to whether the legislature by joint action of both houses prior to permanent organization of the house—*i.e.,* prior to selection of a permanent speaker—could provide compensation for the permanent speaker which would be available to him during his ensuing term without violating Art. II, § 25, of the constitution. If, as the majority says, the functions or status of the speaker, as such, cannot be separated from his functions and status as a legislator, any increase in compensation would be an increase in the compensation of a legislator or state official in violation of Art. II, § 25.

For the reasons indicated, I disagree with the majority opinion. I am convinced that the writ of mandamus should not be issued.