[No. 31045. Department One. August 11, 1949.]

THE STATE OF WASHINGTON, *on the Relation of Thomas F. Lynch et al., Plaintiff,* v. C. A. PETTIJOHN, *Judge of the Superior Court for Pend Oreille County, Respondent.*[1]

*Thomas F. Lynch,* for relators.

*E. L. Sheldon, Chester Chastek,* and *Geo. H. Holt,* for respondent.

[1] Reported in 209 P. (2d) 320.

STEINERT, J.—An original application was filed in this court seeking a writ of mandamus to compel the judge of the superior court for Pend Oreille county to enter of record at once a formal final order dismissing a proceeding previously brought by petitioners and lately tried in that court. Upon the showing made by the applicants' petition, the chief justice directed the issuance of a writ commanding the Honorable C. A. Pettijohn, as judge of the superior court above mentioned, immediately to sign and enter such order or, in the alternative, show cause why he has not done so. In return to the alternative writ, the respondent judge filed a demurrer to the petition, and on the return day, after briefs had here been filed, the cause was heard by this court on the record as presented to it.

The facts as they appear from the record before us are as follows: On the 28th day of February, 1949, the board of county commissioners for Pend Oreille county adopted and entered upon its minutes a resolution declaring an emergency requiring the appropriation of a sum of money to be expended by the prosecuting attorney, to the extent necessary, in employing special counsel to assist in prosecuting certain criminal actions originally brought in that county and subsequently transferred to Spokane county. The resolution was duly published and notice of hearing thereon given, and, on March 21, 1949, the board, after such hearing, entered an order upon its minutes approving the appropriation and expenditure. This course of procedure was in accordance with Rem. Rev. Stat., § 3997-6 [P.P.C. § 478-11].

Upon the entry of that order, two of the relators herein, Julia E. Rantschler and Pearl M. LeRoy, taxpayers of the county, deeming themselves aggrieved by the order and desiring to appeal therefrom, filed their petition with the clerk of the superior court for Pend Oreille county, setting forth their objections to the order and their reasons why the alleged emergency did not exist. That proceeding, which likewise was authorized by Rem. Rev. Stat., § 3997-6, had the compulsory effect of suspending the emergency

order and the authority to make any expenditure or incur any liability thereunder until final determination by the court.

The procedure provided for hearing and disposition of matters of this kind upon petition is also prescribed by Rem. Rev. Stat., § 3997-6, as follows:

" . . . Upon the filing of such petition the court shall immediately fix a time for hearing such petition which shall be at the earliest convenient date. At said hearing the court shall hear the matter de novo and may take such testimony as it deems necessary. Its proceedings shall be summary and informal and its determination as to whether an emergency such as is contemplated within the meaning and purpose of this act exists or not and whether the expenditure authorized by said order is excessive or not shall be final. . . . "

Parenthetically, it may be stated that, although this statute provides that the court's determination as to certain questions shall be final, this court seems to have held, or at least to have indicated, that a writ of review would be entertained by this court in such cases. *State ex rel. Porter v. Superior Court*, 145 Wash. 551, 261 Pac. 90. However, we are not concerned with that problem in this case.

In compliance with these provisions of the statute, the respondent judge set the cause for hearing on March 31, 1949. On that day, a hearing was had, at which time evidence in the form of oral testimony and written exhibits was offered and admitted.

At the conclusion of the evidence and argument, the court recessed for a period of forty-five minutes, during which time the respondent judge prepared a written document, entitled in the cause and labeled "Opinion of the Court," consisting of four and one-half typewritten pages. Upon reconvening, the court delivered its "opinion," thus prepared, reading it into the record, and at the same time furnished each counsel with a copy thereof. A certified copy of this document appears in the record before us showing on its face that the instrument was filed in court on the day of the hearing, that notation thereof was made

in the clerk's minutes, and that it was recorded on the following day by the county clerk.

The question involved in the proceeding now before us concerns the nature and legal effect of the "Opinion of the Court," labeled as such and captioned in the cause to which it relates. For that reason, we shall briefly refer to its form and contents.

The "opinion" begins with a recital of the facts pertaining to the adoption of the resolution by the board of county commissioners, the subsequent proceedings thereon before the board, and the resulting appeal then pending before the superior court upon the petition filed by the aggrieved taxpayers. Then follows a statement of the contentions made by the petitioners upon the hearing and a specification of the questions for decision. Next appears a pronouncement in the nature of findings by the court with reference to the existence of an emergency and the amount of funds necessary to be appropriated to meet the existing critical situation. The document thereupon proceeds and concludes as follows:

"It is the opinion of the Court and *it is now held* that it is necessary, right, and proper that legal assistance and additional help be employed by the County Commissioners of Pend Oreille County to aid the Prosecuting Attorney of said county in preparing the cases I have mentioned for trial and in trying the same; that the sum of $4500.00, the amount found by the Board of County Commissioners as being reasonably necessary to cover the costs of the prosecution of those cases, is not excessive.

"It is my conclusion that the order of the Board of County Commissioners is right and should be supported by the taxpayers of Pend Oreille County.

"*The order of the Board of County Commissioners in making the emergency appropriation is in all things affirmed.*" (Italics ours.)

The clerk's minutes of the hearing recite that "The Judgment of the Court Affirms the actions of the Board of County Commissioners' Order allowing said emergency budget" and, as stated before, the document was noted upon the clerk's minutes and was thereafter recorded.

Immediately after the court had completed its reading of the "opinion," petitioners, through their attorney, gave oral notice of appeal.

On the following day, however, petitioners' attorney, who seemingly was not content to rest his appeal on the notice previously given by him, addressed a letter to the prosecuting attorney for Pend Oreille county, who represented the board of county commissioners, asking the prosecutor to draw a proposed formal order disposing of the pending cause, and requested in the letter that such order, when prepared, be presented to, and signed and entered by, the respondent judge. A copy of the letter was sent to Mr. Chester Chastek, an attorney who was acting as special deputy prosecuting attorney for Pend Oreille county. Mr. Chastek thereupon telephoned to petitioners' attorney, stating that he would not prepare any formal order for entry in the cause, but that the court's opinion could, should, and would be treated as a final order of the court.

On April 27, 1949, petitioners' attorney wrote to the respondent judge, enclosing a proposed formal order for signature by the court, and stating his reasons why such order should be entered. Copies of that letter and order were sent to the prosecuting attorney. The prosecutor promptly replied, saying that he would not approve the order, for the reason that it was not necessary in proceedings of that kind. On the same day, also, the respondent judge answered the letter, and in his communication stated:

"I am not signing the proposed order for the reason that, in my opinion, the order entered on the 31st day of March 1949 constitutes a final judgment.

"As I recollect it you gave oral notice of appeal in open Court from that order, which was intended to be and was considered by all parties at the time as a final order."

Shortly after the dispatch and receipt of the judge's letter, the present proceeding was instituted by the petitioners and their attorney, all of them being named and joined as relators in the application filed in this court.

The sole question in this case is whether the document entitled "Opinion of the Court," described above, is merely

an *opinion* or whether it is a *decision* of the court constituting a final judgment or order from which an appeal could be taken under the provisions of Rem. Rev. Stat., § 1716 [P.P.C. § 5-1].

▮ Although the terms "opinion" and "decision" are often used interchangeably to denote a form of judicial utterance, there is a distinct difference between them. An "opinion" of the court is a statement by the court of its reasons for its findings, conclusions, or judgment, whereas a judicial "decision" is the judgment or conclusion itself rendered by the court and constitutes the instrument through which the court acts.

In the case of *In re Brown,* 6 Wn. (2d) 215, 235, 107 P. (2d) 1104, 1107, this court approved the following definitional statement taken from 7 Cal. Jur. 647, title "Courts," § 49:

"There is a wide difference between 'decisions' and 'opinions.' The decision of a court is its judgment; the opinion is only the reasons given for that judgment. . . . The judgment or decision is entered of record, and can be changed only through a regular application to the court, upon a petition for a rehearing or a modification. The opinion, on the other hand, is the property of the judges, and subject to their revision, correction and modification in any particular deemed advisable until, with the approbation of the writer, it is transcribed in the records, after which it ceases to be the subject of change. It then becomes like a judgment record, and is beyond the interference of the judges, except through regular proceedings before the court by petition."

For other definitions of these terms, see 29 Words & Phrases (Perm. ed.), 589 *et seq.,* and 1949 Cumulative Pocket Part, p. 128.

▮ This court has frequently declared that no appeal can be prosecuted in a cause until and unless there is properly entered in that cause a formal order or judgment from which an appeal is by statute permitted to be taken.

In the case of *In re Christensen's Estate,* 77 Wash. 629, 138 Pac. 1, a petition was filed in a pending probate cause, praying that the proceeds of certain life insurance policies

be set apart as exempt. For a concise statement of the proceedings through which the matter in issue reached this court, we quote from our opinion in that case:

"The matter came on for hearing before Judge Holcomb [the probate judge], who rendered an elaborate opinion in which he held that the proceeds of the policies were exempt, . . . The opinion of the court was filed and is brought here as a part of the transcript. It is not made to appear that any formal judgment or decree was entered, nor does it appear that the clerk of the court made any minute of the memorandum decision of the judge. A motion to dismiss the appeal has been made on the ground that a memorandum decision of the court is not an appealable order."

In granting the motion to dismiss the appeal, this court then said:

"While it is possible that the merit of this case could be as conveniently discussed under the present appeal as if a formal order had been entered below, we are nevertheless constrained to hold, in the interest of orderly procedure, that the appeal is premature. It has been the practice of this Court — and in the light of the statute, Rem. & Bal. Code, §§ 442, 1716 (P.C. 81 §§ 787, 1193), no other practice should be tolerated — to treat a memorandum decision of the superior judge as a direction to counsel in the preparation of the formal orders contemplated by our practice acts. We think, therefore, that, until a formal order is entered denying the petition of the administrator and the petition in intervention of the German-American State Bank, no appeal can be prosecuted."

In the recent case of *State v. Goard*, 32 Wn. (2d) 705, 203 P. (2d) 355, which was a criminal action, a motion was made in this court to dismiss an appeal taken by the state from a ruling made by the superior court granting the defendant's motion for a directed verdict of acquittal. Holding that the ruling of the trial court, not having been carried forward into a written order or judgment, did not constitute an appealable order under the statute, we said:

"During the trial of a case, and thereafter, the court may make rulings and pronouncements and may make orders and give directions, but before any of them can become

the basis of an appeal to this court they must be put into the form of a formal written order or judgment and be signed by the judge and entered by the clerk of the court, unless some statute may provide otherwise. They must have the attribute of finality and not be merely interlocutory, unless made appealable by statute. Such a rule of law is not a surrender of substance to form, but is one of necessity in the orderly procedure of taking an appeal from a trial court to an appellate court. [Citing cases.]"

See, also, *Lasell v. Beck, ante* p. 211, 208 P. (2d) 139.

In view of the rule established by these cases, the question which we must now decide is whether, in the instant case, the so-called "Opinion of the Court" contains the elements essential to constitute a judgment or an appealable order. If it is such judgment or order, mandamus will not lie to compel the entry of an additional order.

The determination of that question must take into consideration, along with other factors, the character of the particular action and the distinctive method followed by the trial court in rendering its decision.

As indicated above, this entire proceeding arose out of a situation considered by the board of county commissioners as constituting an emergency, and was dealt with as such, in accordance with the statute in such case made and provided. Petitioners, deeming themselves aggrieved by the order of the board, appealed to the superior court, and their petition upon such appeal had the automatic effect of suspending the emergency order. By the terms of the statute under which that proceeding was initiated, the court was then required immediately to fix a time for hearing the petition at the earliest convenient date, and at such time to hear the matter *de novo.* The statute lays emphasis on the fact that the proceedings in the superior court shall be "summary and informal," and its determination of the questions of emergency and excessiveness of expenditures is declared to be final. It is thus obvious that, in enacting Rem. Rev. Stat., § 3997-6, the legislature intended to provide a method for determining and disposing of such

matters as expeditiously and with as little technical formality as possible.

This statute is in some respects analogous to Rem. Rev. Stat., § 7697 [P.P.C. § 704-1], relating to hearings before the joint board and appeals to the courts, in industrial insurance cases. Concerning this last-mentioned statute, we made the following observation in *Hoff v. Department of Labor & Industries,* 198 Wash. 257, 88 P. (2d) 419:

"The act as a whole, of which that section is a part, reflects the intention of the legislature to provide a method of disposing of industrial insurance cases with as little technical formality as possible."

Analyzing the situation presented by and in this case, we take particular note of the following facts and factors: (1) The entire proceeding was with respect to an existing emergency matter, recognized as such by all parties concerned; (2) by virtue of the petitioners' appeal to the superior court, the emergency order made by the board of county commissioners was automatically suspended until the matter was determined by the superior court; (3) pursuant to the statute, the court set the cause down for hearing *de novo* at the earliest convenient date; (4) at such hearing the proceedings were summary and informal, as commanded by the statute; (5) at the conclusion of the evidence, the court recessed for a period, and during that time prepared the document denominated "Opinion of the Court"; (6) the court then reconvened and read its "opinion" into the record; (7) the clerk made a minute entry of the "opinion"; (8) thereafter, the document was recorded by the clerk; (9) the instrument concluded with the statement that "The order of the Board of County Commissioners in making the emergency appropriation is in all things affirmed"; (10) upon the conclusion. of the reading of the "opinion," petitioners gave oral notice of appeal; (11) the trial court thereafter, in replying to petitioners' letter, referred to the opinion as "the order entered on the 31st day of March, 1949," and stated that it "constitutes a final judgment."

While the document in question may have included much that ordinarily appears only in the conventional form of an opinion rendered by the court, it concluded with the positive declaration that the order of the board of county commissioners is in all things affirmed, thus effectually determining and disposing of all the issues presented to the court and all the rights of the parties to the action.

It is clear from the record, and from what has hereinbefore been stated, that the trial court intended that the document, although labelled an "opinion," should operate as a final order or judgment in the case. It is equally clear that all parties in court at the time regarded it as such. It should also ever be kept in mind that the court prepared and read the document into the record at the conclusion of the evidence, and that this was done in light of the provision of the statute which required that the proceeding be summary and informal and which declared that the determination by the court shall be final. Unlike the ordinary memorandum opinion or memorandum decision, in general, or the customary rulings and directions made in the progress of a trial, the document here in question, including the decision of the court as it appeared therein, was, when read into the record and recorded by the clerk, no longer, in the normal course of things, within the power of the trial court to change, but became final and binding. In this respect, the instant case differs from the *Christensen, Goard,* and *Lasell* cases, *supra*.

Rem. Rev. Stat., § 404 [P.P.C. § 62-3], defines judgment as the final determination of the rights of the parties in the action.

█ A judgment need not be in any particular form, nor is it essential that any particular technical phraseology or any prescribed form of expression be employed by the court; it is sufficient if it appears to be the act and adjudication of the court which renders it. 30 Am. Jur. 828, Judgments, § 19.

In 1 Freeman on Judgments (5th ed.) 121, appears this statement with reference to the form and contents of judgments:

"If it corresponds with the definition of a judgment as established by the code; if it appears to have been intended by some competent tribunal as the determination of the rights of the parties to an action, and shows in intelligible language the relief granted, — its claim to confidence will not be lessened by a want of technical form, nor by the absence of language commonly deemed especially appropriate to formal judicial records. Even where a form of judgment is prescribed by statute the failure to follow it exactly does not defeat the judgment, since a substantial compliance with the statute is all that is necessary."

And in 49 C. J. S. 181, Judgments, § 62, we read:

"A record is sufficient as a judgment provided it appears therefrom that it was intended as such, and corresponds with the statutory definition of a judgment, and provided it appears therefrom that it is a judicial determination or act of a designated court of a specified term, and if the time, place, parties, matter in dispute, and the result are clearly stated, or may be certainly ascertained therefrom."

▌ We are convinced that the document or instrument here in question constituted a judgment, within the definition of Rem. Rev. Stat., § 404, and the language of the texts hereinbefore cited and quoted. We are particularly inclined to this view because of the language of Rem. Rev. Stat., § 3997-6, which requires that such proceedings shall be summary and informal, or, in other words, that they shall be conducted as expeditiously and with as little technical formality as possible.

This conclusion in no sense infringes upon the general rule that a mere opinion, or even the ordinary memorandum decision, of a court does not constitute its judgment and will not furnish a basis for an appeal until a formal order or judgment is entered.

The application for a writ of mandamus will be denied.

JEFFERS, BEALS, MALLERY, and HILL, JJ., concur.