[No. 77789-6.   En Banc.]
Considered December 1, 2005.      Decided January 12, 2006.

*In the Matter of the Recall of* JAMES E. WEST, *Mayor of the City of Spokane.*

COALITION FOR A NEW SPOKANE ET AL., *Appellants,* V. VICKY DALTON, *as Auditor of Spokane County,* ET AL., *Respondents.*

*Stephen K. Eugster* (of *Eugster Law Office, P.S.C.*), for appellants.

*Steven J. Tucker, Prosecuting Attorney for Spokane County,* and *Dan L. Catt, Deputy; Susan W. Troppmann* and *William F. Etter* (of *Etter McMahon Lamberson & Clary, P.C.*); *Jerry J. Davis*; and *Carl J. Oreskovich*, for respondents.

¶1 PER CURIAM — The Coalition for a New Spokane (Coalition) challenges the validity of the signatures supporting Shannon Sullivan's recall petition against Spokane Mayor James E. West. RCW 29A.56.150(2) provides that where the issue of the sufficiency of a recall petition reaches this court and we find the petition sufficient, the time for the collection of signatures on the petition "begins on the day following the issuance of the decision by the supreme court." The Coalition contends that the signatures supporting the recall petition were gathered before this court filed its written opinions in *In re Recall of West,* 155 Wn.2d 659, 662, 121 P.3d 1190 (2005) on October 26, 2005, and thus the signatures are invalid under RCW 29A.56.150(2). We disagree and instead conclude that the decision of this court, for purposes of RCW 29A.56.150(2), occurred when we issued the order affirming the superior court on August 24, 2005. Therefore, the signatures supporting the recall petition were not collected prematurely, and we affirm the superior court in this case.

I

Statement of Facts and Procedural History

¶2 The Spokane County Superior Court authorized a recall election to proceed against Spokane Mayor James

West. *Recall of West*, 155 Wn.2d at 662. West appealed directly to this court, and on August 24, 2005, we held a special session to hear oral argument in that case. *Id.* On that day, we entered a brief order affirming the superior court and explaining that opinions would be filed in due course. Relying on this court's order, Shannon Sullivan, the recall petitioner, began collecting signatures. On September 21, 2005, Sullivan submitted her petition and more than 17,000 signatures to the Spokane County auditor.

¶3 Stephen Eugster, on behalf of the Coalition, filed a "Petition for Writ of Mandamus and Prohibition and Complaint for Declaratory Judgment" in Spokane County Superior Court, asking that court to declare the recall signatures invalid and award the Coalition attorney fees and costs. Clerk's Papers (CP) at 1, 3, 17. Under RCW 29A.56.150(2), if the sufficiency of a recall petition is appealed to the Supreme Court, signatures supporting the petition cannot be collected until "the day following the issuance of the decision by the supreme court." According to the Coalition, the order issued on August 24 was not a "decision," at that time no decision had yet been filed, and therefore the signatures supporting the recall petition were invalid.

¶4 On October 6, the Spokane County auditor, Vicky Dalton, announced that she had verified sufficient signatures to put the issue on the ballot. She called for a special mail-in election on December 6, 2005.

¶5 On October 10, the Spokane County Superior Court (visiting judge, Ted W. Small) concluded that Eugster and the Coalition had standing to bring the action, but that this court's August 24 order was a " 'decision' by the court as that term is used in RCW 29A.56.150." CP at 66-67. Thus, the timing of the release of opinions did not govern the timing of signature collection as set forth in that statute. The petition was therefore dismissed and each party was ordered to bear its own costs and attorney fees.

¶6 On October 11, Eugster appealed to this court, asking that we reverse the trial court and declare the gathered

signatures invalid. On October 26, we filed opinions explaining our conclusion in the *Recall of West* case. In response to the Coalition's appeal, Sullivan filed a motion to dismiss. In addition, the Spokane County auditor filed a response arguing, as she did at the trial court, that Eugster and the Coalition do not have standing to challenge the validity of the signatures.

## II

### Analysis

¶7 We must determine whether the petitioner has standing to bring this action and, if so, whether the recall petition signatures are invalid because they were gathered after this court issued an order affirming the superior court but before this court filed its opinions in this case.

■ ¶8 *Standing*: As an initial matter, the Spokane County auditor argues that the Coalition does not have standing to bring this action. The Coalition contends that the auditor cannot raise this argument without having filed her own notice of appeal on this issue. However, standing is an issue that this court can discuss sua sponte, even if a party has not raised it. *Branson v. Port of Seattle*, 152 Wn.2d 862, 875 n.6, 101 P.3d 67 (2004). Because this is a question that is likely to recur, we address the challenge to the Coalition's standing.

■ ¶9 A section of the recall statute, RCW 29A.56.270, entitled "Enforcement provisions—Mandamus—Appellate review," specifically provides:

> The superior court of the county in which the officer subject to recall resides has original jurisdiction to compel the performance of any act required of any public officer or to prevent the performance by any such officer of any act in relation to the recall not in compliance with law.

.

Thus, the recall statute provides the mechanism through which a party can obtain the relief requested here.[1]

¶10 The auditor argues that in order to attain a remedy under this statute, the petitioner must show the absence of any other adequate remedy, as required in RCW 7.16.170. However, the plain language of RCW 29A.56.270 does not adopt nor refer to the limitations set forth in chapter 7.16 RCW, and the auditor does not cite to any authority that makes this connection. Moreover, the broad remedial power granted to the superior court under RCW 29A.56.270 belies the notion that the legislature would have us apply the strict limitations set forth in chapter 7.16 RCW in this case.

¶11 This court has held that voters have sufficient interest to bring an action for mandamus in a case involving an election. *See State ex rel. Harvey v. Mason*, 45 Wash. 234, 237, 88 P. 126 (1907). And, too, the Coalition's original complaint also sought declaratory judgment that the signatures on the recall petition are invalid. CP at 17. The auditor presents no argument as to why declaratory judgment would have been unavailable. Therefore, the superior court was correct when it concluded that the Coalition had standing to bring this action.

■ ■ ¶12 *Validity of Signatures*: With regard to the collection of signatures, RCW 29A.56.150(2) explains that sponsors of a recall of a nonstatewide officer have a maximum of 180 days to obtain and file supporting signatures.

> If the decision of the superior court regarding the sufficiency of the charges is appealed, the one hundred eighty . . . day period for the circulation of signatures *begins on the day following the issuance of the decision by the supreme court.*

RCW 29A.56.150(2) (emphasis added). The Coalition argues that the order issued by this court on August 24 was not a "decision" for purposes of the statute, and valid signature collection could not begin until opinions were

---

[1] While RCW 29A.56.270 (formerly RCW 29.82.160 (2002)) is specifically superseded in part by RAP 18.22, the rule makes it clear that it supersedes only the portion of the statute that "relates to appellate procedure." RAP 18.22(b).

filed. Thus, the Coalition contends, the signatures collected after we issued the order, but before we filed opinions, are invalid. However, the plain language of RCW 29A.56.150(2) reveals nothing that would prevent our order affirming the superior court from constituting a "decision" for purposes of the statute.

¶13 To support its interpretation of the term "decision," the Coalition also points to article IV, section 2 of the Washington Constitution which states, in part, that "[i]n the determination of causes all decisions of the [supreme] court shall be given in writing and the grounds of the decision shall be stated." The Coalition contends that this court does not issue a "decision" in a case until it files an opinion explaining its grounds. Br. of Appellants at 10 (arguing the constitution requires "[a] decision 'given in writing' wherein 'the grounds of the decision shall be stated.'" (quoting WASH. CONST. art. IV, § 2)). Again, however, the plain language of this constitutional provision does not require the court's decision and its opinion to be filed at the same time or in the same document. Fundamentally, the constitutional provision requires that "all decisions of the court shall be given in writing *and* the grounds of the decision shall be stated." WASH. CONST. art. IV, § 2 (emphasis added). It does *not* require that all decisions of the court shall be given in writing *wherein* the grounds must be stated.

¶14 Moreover, as noted by the superior court, this court drew a distinction between an opinion and a decision in *State ex rel. Lynch v. Pettijohn*, 34 Wn.2d 437, 441-42, 209 P.2d 320 (1949):

> Although the terms "opinion" and "decision" are often used interchangeably to denote a form of judicial utterance, there is a distinct difference between them. An "opinion" of the court is a statement by the court of its reasons for its findings, conclusions, or judgment, whereas a judicial "decision" is the judgment or conclusion itself rendered by the court and constitutes the instrument through which the court acts.

*Id.* at 442. More concisely, the *Pettijohn* court recited, " '[t]he decision of a court is its judgment; the opinion is only the reasons given for that judgment.' " *Id.* (quoting *In re Guardianship of Brown,* 6 Wn.2d 215, 235, 107 P.2d 1104 (1940)). These definitions support our conclusion that this court's decision and its opinion(s) can be announced at different times.

¶15 The Coalition also argues that the "decision" referenced in RCW 29A.56.150(2) must be the court's *final* decision, and this court's decisions become final only when a mandate terminating review is issued. *See* RAP 12.2. Because a mandate is issued only after there has been an opportunity for a motion for reconsideration, according to the Coalition, the August 24 order could not have been the final decision from this court. *See* RAP 12.5(c).

¶16 The Coalition is correct that there is always a possibility, albeit slight, that the outcome of a case in this court could change upon reconsideration. However, the Coalition's argument in this case relies upon the interpretation of the term "decision" as it is used in RCW 29A-.56.150(2). The legislature has recognized the emergency nature of recall appeals and that different procedures may apply to these cases. *See* RCW 29A.56.270 (providing 30 days from the date of the *superior court decision* for this court to fully dispose of a recall appeal).[2] When drafting RCW 29A.56.150(2), the legislature did not use the term "mandate" or "final decision." Instead it allowed the collection of signatures to begin on the day after the issuance of this court's "decision." *Id.* The Coalition has not presented any evidence that the legislature intended the term "decision" to mean only this court's mandate; in fact, the legislature implicitly approved mechanisms for accelerated disposition of recall cases.

---

[2] Again, this court expressly superseded the portions of this provision that speak to appellate procedure, *see* RAP 18.22(b), but the legislature's stance on this issue reveals its treatment of these appeals as urgent and deserving of accelerated procedure.

¶17 Moreover, in defining a court's operative act, the *Pettijohn* court placed great weight on what the issuing court intended. *Pettijohn*, 34 Wn.2d at 446. This court has occasionally issued orders affirming or reversing the lower court in cases where prompt resolution is necessary, for example, because ballots need to be printed by a particular date. *See, e.g., Wash. State Grange v. Locke*, 153 Wn.2d 475, 479, 105 P.3d 9 (2005); *Pederson v. Moser*, 99 Wn.2d 456, 457-58, 662 P.2d 866 (1983). In the *West* case, this court held an emergency session in August to resolve this issue, rather than set the case for oral argument in the fall term. The court chose to issue an order on the same day that it heard oral argument, while allowing the justices to file considered opinions in due course. Given the urgent nature of the proceedings, this court intended the August 24 order to be its operative act. Our course of action did not conflict with the plain language of RCW 29A.56.150(2) as we interpret it in conjunction with article IV, section 2 of the Washington Constitution. We therefore affirm the superior court.

¶18 *Motions*: Counsel for Sullivan filed a motion to dismiss and a motion for sanctions under RAP 18.9 seeking compensatory damages. Sullivan argues that the Coalition's appeal to this court was frivolous and filed with the intent to delay the recall election. In response, the Coalition filed a competing motion for sanctions against Sullivan under CR 11, seeking reasonable expenses and attorney fees. The Coalition also filed a motion to dismiss pursuant to the anti-SLAPP (strategic lawsuits against public participation) statute, RCW 4.24.510. While the Coalition does not prevail, we conclude that neither party's filings were frivolous. In addition, we decline to apply the anti-SLAPP statute to Sullivan's motions because the Coalition points to no case in which Washington courts have approved the application of that statute to a motion to dismiss. We deny both parties' motions and affirm the superior court's determination that each party should bear its own costs and attorney fees.

## III

### Conclusion

¶19 We hold that the Coalition has standing to bring this action, but we conclude that this court's decision, for purposes of RCW 29A.56.150(2), occurred when we issued an order affirming the superior court on August 24, 2005. Thus, the signatures collected after that date were not prematurely gathered. We affirm the superior court and deny the parties' motions to dismiss and motions for sanctions.

Reconsideration denied February 22, 2006.